**UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                    :
UNITED STATES OF AMERICA,                                           :
                                                                    :
 v.                                                                 :
                                                                    :
                                                                    :   Case No. 17-cr-00686 (LAK)
JAMES GATTO,                                                        :
a/k/a "Jim,"                                                        :
MERL CODE, and                                                      :
CHRISTIAN DAWKINS,                                                  :
                                                                    :
            Defendants.                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF CHRISTIAN DAWKINS'S**
**MOTION TO SUPPRESS**
**CERTAIN WIRETAP INTERCEPTIONS**
**AND FOR ADDITIONAL INFORMATION CONCERNING THE PRESENTMENT OF**
**THOSE INTERCEPTIONS TO THE GRAND JURY**


**HANEY LAW GROUP PLLC**
Steven A. Haney
3000 Town Center Drive, Suite 2570
Southfield, Michigan 48075
(248) 414-1470
steve@haneygroup.net

*Attorneys for Defendant Christian Dawkins*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND...........................................................................................2

ARGUMENT ..................................................................................................................4

I.    THE COMMUNICATIONS INTERCEPTED PURSUANT TO THE APRIL 7
      WIRETAP ORDER MUST BE SUPPRESSED BECAUSE THE APRIL 7
      WIRETAP ORDER IS FACIALLY INSUFFICIENT........................................4

      A.    A Wiretap Order Is Facially Insufficient When It Fails To Identify The
            Authorizing Justice Department Official and All Evidence Intercepted Pursuant
            To That Order Must be Suppressed. ........................................................4

      B.    The April 7 Wiretap Order Is Facially Insufficient and Its Interceptions Must Be
            Suppressed. ...........................................................................................7

II.   COMMUNICATIONS INTERCEPTED PURSUANT TO SUBSEQUENT
      WIRETAP ORDERS ARE DERIVATIVE EVIDENCE THAT MUST BE
      SUPPRESSED. ..............................................................................................13

      A.    Evidence Derived From Wiretap Orders That Relied Upon Communications
            Obtained Via An Invalid Order Must Be Suppressed...........................13

      B.    The Communications Obtained From The Subsequent Wiretap Orders Constitute
            Derivative Evidence That Must Be Suppressed....................................14

      C.    Mr. Dawkins Is Entitled To The Transcripts Of The Grand Jury's Proceedings
            Because the Indictment Against Him May Be Based Upon Communications
            Obtained Pursuant to the April 7 Wiretap Order and the Subsequent Wiretap
            Orders....................................................................................................15

CONCLUSION..............................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Case**                                                                      **Page(s)**

*Berger v. New York*,
  388 U.S. 41,  87 S.Ct. 1873 (1967)...................................................................4

*Dahda v. United States*,
  852 F.3d 1282 (10th Cir. 2017), *cert. granted*, 138 S.Ct. 356 (U.S. Oct. 16, 2017) .........12

*Gelbard v. United States*,
  408 U.S. 41, 92 S.Ct. 2357 (1972)................................................................4

*United States v. Acon*,
  513 F.2d 513 (3d Cir. 1975)....................................................................11

*United States v. Callum*,
  410 F.3d 571 (9th Cir. 2005) ...........................................................6, 11, 12

*United States v. Chavez*,
  416 U.S. 562, 94 S.Ct. 1849 (1974)......................................................5, 10, 11

*United States v. Dahda*,
  853 F.3d 1101 (10th Cir. 2017), *cert. granted*, 138 S.Ct. 356 (U.S. Oct. 16, 2017) .........13

*United States v. Figueroa*,
  618 F.2d 934 (2d Cir. 1980)....................................................................15

*United States v. Giordano*,
  416 U.S. 505, 94 S.Ct. 1820 (1974)...................................................... passim

*United States v. Glover*,
  736 F.3d 509 (D.C. Cir. 2013) ..........................................................6, 10, 12

*United States v. Gray*,
  521 F.3d 514 (6th Cir. 2008) ..............................................................11, 12

*United States v. Holden*,
  603 F. App'x 744 (11th Cir. 2015) ............................................................11

*In re United States in Order Authorizing the Use of a Pen Register*,
  416 F. Supp. 800, (S.D.N.Y. 1976), *aff'd in relevant part*,
  *United States v. New York Tel. Co.*, 434 U.S. 159, 98 S.Ct. 364 (1977) ..........................14

*United States v. Lambus*,
  251 F. Supp. 3d 470 (E.D.N.Y. 2017) ..........................................................12

*United States v. Lawson*,
  545 F.2d 557 (7th Cir. 1975) .................................................................11

*United States v. Magaddino,*
    496 F.2d 455 (2d Cir. 1974).................................................................15

*United States v. Marion,*
    535 F.2d 697 (2d Cir. 1976).................................................................13

*United States v. Radcliff,*
    331 F.3d 1153 (10th Cir. 2003) ..................................................6, 11, 12

*United States v. Scurry,*
    821 F.3d 1 (D.C. Cir. 2016)........................................................... passim

*United States v. Simels,*
    No. 08-CR-640, 2009 WL 1924746 (E.D.N.Y. July 2, 2009)...........................6

*United States v. Tane,*
    329 F.2d 848 (2d Cir. 1964).................................................................15, 16


Statutes

18 U.S.C. § 2510(11) .................................................................................5

18 U.S.C. § 2515 .................................................................................7, 13

18 U.S.C. § 2516(1) .................................................................................5

18 U.S.C. § 2518(4)(d) .................................................................................5, 13

18 U.S.C. § 2518(10)(a) .................................................................................5

18 U.S.C. § 2518(10)(a)(ii) .................................................................................7, 13

Defendant Christian Dawkins respectfully submits this memorandum of law in support of his motion to suppress, pursuant to 18 U.S.C. § 2518(10)(a)(ii), all communications intercepted pursuant to the April 7, 2017 Order authorizing a thirty-day wiretap of the cellular phone of Munish Sood, as well as all evidence derived from those intercepted communications, because that Order was "facially insufficient."

## PRELIMINARY STATEMENT

On April 7, 2017, the District Court issued an Order (the "April 7 Wiretap Order" or "Order") permitting the Government to tap Munish Sood's phone for a period of thirty days and targeting communications with Christian Dawkins, among others.  The April 7 Wiretap Order, however, failed to comply with the statutory requirements of the Federal Wiretap Act (the "Wiretap Act," or "Title III") because it did not identify the Department of Justice official who had authorized the Government's request for a wiretap.  Instead, the Order contained a bracketed placeholder, stating only that the Government's application was "authorized by [FILL IN], Acting Deputy Assistant Attorney General."  As the D.C. Circuit decided in a 2016 case that is directly on point, this failure to identify, by name, the authorizing Justice Department official renders the April 7 Wiretap Order "facially insufficient" under Section 2518(10)(a)(ii) of the Wiretap Act, which further mandates that all communications intercepted pursuant to the facially insufficient Order be suppressed.  Because subsequent wiretaps were authorized based on the communications intercepted pursuant to the invalid April 7 Wiretap Order, all interceptions obtained pursuant to these subsequent wiretap orders constitute "derivative evidence" that must be suppressed.

Moreover, to the extent the communications intercepted pursuant to the invalid April 7 Wiretap Order, or the fruits thereof, were presented to the Grand Jury which indicted Mr.

1

Dawkins, the Indictment against Mr. Dawkins must be dismissed.  Accordingly, Mr. Dawkins

moves this Court under Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure for an

Order authorizing the disclosure of the transcripts of the Grand Jury's proceedings in this matter,

so that Mr. Dawkins may assess whether the Indictment against him was tainted by the illegal

wiretap and he should seek its dismissal.

## FACTUAL BACKGROUND

On April 7, 2017, the Government submitted an application to the District Court

seeking to tap the cellular phone of Munish Sood for a thirty-day period (the "April 7 Wiretap

Application").  (*See* Ex. 1).  The Government's April 7 Wiretap Application specifically targeted

Mr. Dawkins.  The Government acknowledged to the Court that it was "not privy to potentially

criminal communications involving Dawkins" and that one of the reasons it sought to wiretap

Mr. Sood's phone was to "capture potentially criminal conversations involving [Mr.] Dawkins."

(Ex. 1 at SDNY_00007784).  The Government's wiretap request was granted on the same day it

was submitted.  (*See* Ex. 2 (the "April 7 Wiretap Order")).

The April 7 Wiretap Order failed to identify the Department of Justice official

who authorized the Government's application for a wiretap, as required by the Wiretap Act.

Instead, the Order stated:  "this Application has been authorized by **[FILL IN]**, Acting Deputy

Assistant Attorney General."  (Ex. 2 at SDNY_00007807 (emphasis added)).  Despite this

deficiency, interception of Mr. Sood's cellular phone communications began on or about April 8,

2017.

The Government's subsequent wiretap applications relied upon communications

obtained via the April 7 Wiretap Order.  On May 5, 2017, the Government submitted an

application for an extension of the April 7 Wiretap Order.  (Ex. 3 (Government's May 5, 2017

extension application)).  Almost twenty pages of this extension application were devoted to a description of calls that had been intercepted pursuant to the April 7 Wiretap Order, including calls between Mr. Sood and Mr. Dawkins.  *Id.* at SDNY_00007952-70.  The requested extension was granted on May 5, 2017.  (*See* Ex. 4 (May 5 Order)).

        The communications intercepted pursuant to the April 7 Wiretap Order were also relied upon by the Government in its applications for several wiretaps of Mr. Dawkins's cell phone.  (Ex. 5 (Government's June 19, 2017 application) at SDNY_00008138-55 (recounting calls obtained via the April 7 Wiretap Order), *granted* June 19, 2017 (Ex. 6); *see also* Ex. 7 (Government's July 19, 2017 renewal application) at SDNY_00008342-59 (recounting calls obtained via the April 7 Wiretap Order), *granted* July 19, 2017 (Ex. 8); Ex. 11 (Government's August 22, 2017 application), at SDNY_00009145-62 (recounting calls obtained via the April 7 Wiretap Order), *granted* August 22, 2017 (Ex. 12); *see also* Ex. 15 (Government's September 20, 2017 renewal application), at SDNY_00009447-65 (recounting calls obtained via the April 7 Wiretap Order), *granted* September 20, 2017 (Ex. 16)).

        Likewise, the communications intercepted pursuant to the April 7 Wiretap Order were relied upon by the Government in its applications for wiretaps of Mr. Code's cell phone and Mr. Gatto's cell phone.  (*See* Ex. 9 (Government's August 7, 2017 application) at SDNY_00008584-01 (recounting calls obtained via the April 7 Wiretap Order), *granted* August 7, 2017 (Ex. 10); *see also* Ex. 13 (Government's August 30 application) at SDNY_00008852-70 (recounting calls obtained via the April 7 Wiretap Order), *granted* August 30, 2017 (Ex. 14)).

<u>**ARGUMENT**</u>

I.   **THE COMMUNICATIONS INTERCEPTED PURSUANT TO THE APRIL 7 WIRETAP ORDER MUST BE SUPPRESSED BECAUSE THE APRIL 7 WIRETAP ORDER IS FACIALLY INSUFFICIENT.**

   A.   **A Wiretap Order Is Facially Insufficient When It Fails To Identify The Authorizing Justice Department Official and All Evidence Intercepted Pursuant To That Order Must be Suppressed.**

   Title III prescribes the procedure for securing judicial authority to intercept wire communications in the investigation of specified offenses.  Because a wiretap, by its nature, "sweep[s] in all conversations within its scope without regard to the participants or the nature of the conversations," it "intrudes upon the privacy of those not even suspected of crime and intercepts the most intimate of conversations."  *Berger v. New York*, 388 U.S. 41, 64-65, 87 S.Ct. 1873, 1886 (1967) (Douglas, J., concurring).  For this reason, when Title III was drafted, the "protection of privacy was an overriding congressional concern."  *Gelbard v. United States*, 408 U.S. 41, 48, 92 S.Ct. 2357, 2361 (1972).  In addition to these "congressional concern[s]," *id.*, both President Lyndon B. Johnson and Attorney General Ramsey Clark expressed "serious misgivings about a wiretap statute, with the Attorney General testifying that wiretaps posed a risk to privacy 'too great to permit their exploitation even by Government agents acting in the name of law enforcement.'" *United States v. Scurry*, 821 F.3d 1, 9 (D.C. Cir. 2016) (citing Anti-Crime Program: Hearings Before Subcomm. No. 5 of the H. Comm. on the Judiciary, 90th Cong. 209 (1967)).

   Congress sought to mitigate these privacy concerns by establishing explicit limitations in Title III on obtaining and using wiretaps.  Among other safeguards, Section 2518 of the Wiretap Act requires every court order authorizing a wiretap to specify "the identity of . . . the person authorizing the [Government's wiretap] application" (the "identification

4

requirement").[1]  18 U.S.C. § 2518(4)(d).  The Supreme Court has explained that the purpose of this identification requirement was to "make clear who bore the responsibility for approval of the submission of a particular wiretap application."  *United States v. Chavez*, 416 U.S. 562, 571-72, 94 S.Ct. 1849, 1851 (1974).  Congress reasoned that if the Attorney General (or one of the other specified Justice Department officials) was required to be "individually identified as having approved the [wiretap] application," that official would "make doubly sure that the statutory [wiretap] authority be used with restraint."  *Scurry*, 821 F.3d at 10 (quoting *United States v. Giordano*, 416 U.S. 505, 515, 94 S.Ct. 1820, 1826-27 (1974)).

Title III provides that an "aggrieved person" may move to suppress "any wire or oral communication intercepted" on any of the following grounds:  (i) the "communication was unlawfully intercepted" ("Subsection (i)"); (ii) the "order of authorization or approval under which it was intercepted is insufficient on its face" ("Subsection (ii)"); or (iii) the "interception was not made in conformity with the order of authorization or approval" ("Subsection (iii)").  18 U.S.C. § 2518(10)(a).  An "aggrieved person" is "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed."  18 U.S.C. § 2510(11).[2]

---

[1] Under Section 2516 of the Act, only "the Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General or acting Deputy Assistant Attorney General. . . specially designated by the Attorney General" may authorize a wiretap application to be submitted to the court.  18 U.S.C. § 2516(1).

[2] Mr. Dawkins is an "aggrieved person" with standing to challenge the April 7 Wiretap Order because the April 7 Wiretap Order specifically lists "Christian Dawkins" as a target subject, *see* Ex. 2 at SDNY_00007805, and because Mr. Dawkins's communications were intercepted pursuant to the wiretap authorized by the April 7 Wiretap Order.  Intercepted calls with Mr. Dawkins captured pursuant to the April 7 Wiretap Order can be found at the following Bates-numbers: SDNY_00007700-0155 (April 14, 2017); SDNY_00007700-0649 (May 2, 2017);

When a defendant moves for suppression under Subsection (ii), a court must first determine if the wiretap order is "facially insufficient." *United States v. Glover*, 736 F.3d 509, 513 (D.C. Cir. 2013). The D.C. Circuit recently held that when a wiretap order is found to be facially insufficient under Subsection (ii), "[s]uppression is the mandatory remedy" and "[t]here is no room for judicial discretion." *Glover*, 736 F.3d at 513; *Scurry*, 821 F.3d at 8, 13-14.[3] To determine whether a wiretap order is facially insufficient, the court "must examine the four corners of the [wiretap] order and establish whether, on its face, it contains all that Title III requires it to contain." *Scurry*, 821 F.3d at 8 (citing *Chavez*, 416 U.S. at 573-74, 94 S.Ct. at 1855-56 and *United States v. Giordano*, 416 U.S. 505, 525 n.14, 94 S.Ct. 1820, 1831 (1974)). If the wiretap order does not comply with each of the statutory requirements of Title III, it is "insufficient on its face." *Id*.; *see also United States v. Simels*, No. 08-CR-640, 2009 WL 1924746, at *11 (E.D.N.Y. July 2, 2009) (a wiretap order is "facially sufficient" only where "on the basis of the information that appears on its face, it could reasonably be believed that it meets all the statutory requirements").

Where a wiretap order fails to identify, by name, the Justice Department official who authorized the Government's wiretap application, the wiretap order is "facially insufficient." *Scurry*, 821 F.3d at 8; *Giordano*, 416 U.S. at 525 n.14, 94 S.Ct. at 1831 (noting that a wiretap order is "insufficient on its face" when the court "fail[s] to identify at all in the interception order the person who authorized the application."); *see also United States v. Callum*, 410 F.3d 571, 576 (9th Cir. 2005) (wiretap order was "facially insufficient" where order "listed no one at all" in place of authorizing Justice Department official); *United States v. Radcliff*, 331

SDNY_00007700-0650 (May 2, 2017); SDNY_00007700-0747 (May 4, 2017). If the Court believes it would be helpful, Defendants will provide a CD containing these recordings.

[3] The Second Circuit has not yet had the opportunity to address this issue.

6

F.3d 1153, 1162 (10th Cir. 2003) (wiretap order was "facially insufficient" where authorizing official was not identified by name).

Once a wiretap order is found to be "insufficient on its face" under Subsection (ii), Title III provides that any intercepted communications and "evidence derived therefrom" may not be "received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States."  18 U.S.C. § 2515 (suppression remedy applies to any communication that has been intercepted "in violation of" the statute).

> **B.     The April 7 Wiretap Order Is Facially Insufficient and Its Interceptions Must Be Suppressed.**

The April 7 Wiretap Order is "facially insufficient" because it fails to identify the Department of Justice official who authorized the Government's application, as required by Section 2518(4)(d) of Title III.  Instead, the Order states:  "the Application has been authorized by **[FILL IN]**, Acting Deputy Assistant Attorney General, an official of the United States Department of Justice specially designated by the Attorney General of the United States to authorize applications for the interception of wire or oral communications."  (Ex. 2 at SDNY_00007807 (emphasis added)).  The April 7 Wiretap Order's failure to comply with Title III requires that all communications intercepted pursuant to the Order be suppressed.  18 U.S.C. § 2518(10)(a)(ii); 18 U.S.C. § 2515.

The D.C. Circuit's decision in *United States v. Scurry* is directly on point.  In *Scurry*, the Government obtained two wiretap orders, each of which stated: "this application [was] authorized by * * * * * *, Deputy Assistant Attorney General of the Criminal Division," with asterisks in place of the name of the authorizing Justice Department official.  821 F.3d at 8. The Government's applications, however, had identified those officials by name.  *Id*.  The

defendants in *Scurry* moved to suppress the calls that had been intercepted pursuant to the two orders, arguing that the orders were "facially insufficient" because they violated Title III's identification requirement. *Id.* at 10.  The district court agreed that the two wiretap orders were "facially insufficient," but nevertheless concluded that suppression was not warranted. *Id.* at 8. The district court reasoned that because the Government's wiretap *applications* had identified, by name, the Justice Department officials who approved the Government's wiretap requests, the failure in the wiretap *orders* to identify those authorizing officials was merely a "technical defect" that did not merit suppression. *Id.*

On appeal, the D.C. Circuit reversed. *Id.* at 13-14.  As a threshold matter, the D.C. Circuit confirmed that there was "little question that each of the . . . orders is 'insufficient on its face' because each fails to include information expressly required by Title III," *i.e.*, the identity of the Justice Department official who had approved the Government's request for a wiretap. *Id.* at 8.  While the Government argued that a wiretap order is "not facially insufficient" even where "essential information required by Title III is missing from the order," so long as "other materials" submitted to the court supplied the missing information, *id.* at 9, the D.C. Circuit rejected the Government's argument.

The D.C. Circuit explained that Title III's facial insufficiency inquiry "is limited to the four corners of the wiretap order" and for that reason, the information in the Government's applications was irrelevant. *Id.*  The Court explained that Congress outfitted Title III with two separate statutory identification requirements:  (1) an "*application* identification requirement," found in Section 2518(1)(a), which requires the Government to identify the authorizing Justice Department in its application for a wiretap; and (2) an "*order* identification requirement," found in Section 2518(4)(d), which requires every wiretap order issued by a court to identify the

approving Justice Department official. *Id*. (emphasis in original). The D.C. Circuit explained

that the Government's citation to its wiretap applications was insufficient because if Title III's

"*order* identification requirement" could be met by "satisfying [Title III's] *application*

identification requirement," that would "effectively render" the order identification requirement

in Section 2518(4)(d) "superfluous." *Id*. (emphasis in original) ("There is something

incongruous about an interpretation that would let extrinsic documents transform an order that is

'insufficient on its face' into one that is sufficient 'on its face.'").

       Moreover, the D.C. Circuit further explained that it is the wiretap *order*, not the

Government's application, that acts as the "operative field document" for the "field agents or

telecommunications service providers" responsible for effectuating the wiretap, and for that

reason, the order itself must identify the authorizing Justice Department official by name. *Id*. at

11. The D.C. Circuit explained that at the time of Title III's passage, Congress did not want

"field agents or telecommunications service providers to conduct or assist in conducting wiretaps

unless they — like the judge who authorized the wiretap — could satisfy themselves of proper

compliance with section 2516(1)'s application pre-approval requirement." *Id*. ("[B]y tying

immunity to good-faith reliance on a court order… Congress created an incentive for field agents

and service providers to examine a wiretap order for completeness, including the identity of the

authorizing Justice Department official"). Title III's identification requirement is not a

technicality but rather an example of Congress's desire to implement "critical check[s] on the

overuse or misuse of wiretapping authority." *Id*. (citing *Giordano*, 416 U.S. at 516, 528, 94 S.Ct.

at 1827). Accordingly, after considering both the legislative history of Title III and the plain

language of the statute, the D.C. Circuit squarely held: "a wiretap order is insufficient on its face

where it fails to identify the Justice Department official who approved the underlying application, as required by Title III." *Id.* at 5 (internal quotations and citations omitted).

The D.C. Circuit went on to confirm that because the wiretap orders in *Scurry* were "facially insufficient," the "only appropriate remedy [was] suppression" of the calls intercepted pursuant to those orders. *Id.* at 13; *Glover*, 736 F.3d at 513.  In so holding, the Circuit rejected the Government's argument that the insufficiency was only a "technical defect" that did not merit suppression.  *Scurry*, 821 F.3d at 13.

As the *Scurry* court acknowledged, there is currently a Circuit split, arising out of the interpretation of the Supreme Court's decision in *Chavez*, regarding whether suppression is mandatory for a Subsection (ii) violation.  The Second Circuit has not yet decided the issue.  In *Chavez*, the Supreme Court reviewed a wiretap order that named Acting Assistant Attorney General Will Wilson as the authorizing official, although the order had actually been authorized by the Attorney General.  416 U.S. at 573-74, 94 S.Ct. at 1855-56.  The defendant argued first that the order was facially insufficient under Subsection (ii) and second that it was unlawful under Subsection (i).  The Supreme Court held that the order was facially *sufficient* under Subsection (ii) because it "identified on its face" the name of an authorizing Justice Department official, albeit not the one who had actually approved the Government's application.  *Id.*; *see also Giordano*, 416 U.S. at 525 n.14, 94 S.Ct. at 1831 (where an "order, on its face, clearly though erroneously, identified….the Justice Department officer authorizing the application…the intercept order was facially sufficient" under Subsection (ii)).

The Supreme Court also rejected the defendant's argument for suppression under Subsection (i), holding that the misidentification defect in the wiretap order did not implicate Title III's core concerns, a showing that is necessary in order to suppress under Subsection (i).

*Chavez,* 416 U.S. at 574-75, 94 S.Ct. at 1855-56; *see also Giordano,* 416 U.S. at 527, 94 S.Ct. at 1832-33 (explaining that while an "infringement" of a Title III requirement requires suppression under Subsection (ii), it can also merit suppression under Subsection (i) if the statutory requirement that was violated "directly and substantially implement[s]" Title III's core concerns).  But, even though the Supreme Court articulated this "core concerns" test "specifically with respect to motions to suppress under [Subsection (i)]," a number of Circuit courts later applied it to motions to suppress under Subsection (ii).  *Radcliff*, 331 F.3d at 1162; *see also United States v. Holden*, 603 F. App'x 744, 749-50 (11th Cir. 2015); *United States v. Lawson*, 545 F.2d 557, 562-63 (7th Cir. 1975); *United States v. Acon*, 513 F.2d 513, 516-19 (3d Cir. 1975).  The Government relied on cases from these Circuits in *Scurry*, to argue that even in instances where an order is facially insufficient because it fails to identify the authorizing Justice Department official, that defect does not implicate the "core concerns" of Title III so long as the Government's applications include the missing information.  *Scurry*, 821 F.3d at 13 (noting Government's "misplaced" reliance on "out of circuit" cases that apply the "core concerns" test to Subsection (ii) violations, *e.g., Callum*, 410 F.3d at 574-76; *United States v. Gray*, 521 F.3d 514, 524-25 (6th Cir. 2008)).  The D.C. Circuit rejected the Government's argument.

The D.C. Circuit explained in *Scurry* that it has not "import[ed] the 'core concerns' test into the facial-insufficiency context" because it strives to be "faithful to both Supreme Court precedent and the text of Title III."  821 F.3d at 13.  In *United States v. Glover*, decided in 2013, the D.C. Circuit explained that to "apply[] the 'core concerns' test to [Subsection (ii)] would turn the Supreme Court's approach [in *Chavez* and *Giordano*] on its

head, elevating policy over text." [4]  736 F.3d at 513-14 ("applying the 'core concerns' test to [Subsection (ii)] would actually treat that paragraph as 'surplusage'—precisely what the Supreme Court tried to avoid").

Indeed, even those Circuits that have read the Supreme Court's "core concerns" test into Subsection (ii) acknowledge that doing so "goes a step farther" than the Supreme Court has ever suggested.  *Callum*, 410 F.3d at 574-76  (explaining that while *Giordano* and *Chavez* stand for the proposition that a wiretap order can list an "incorrect" DOJ official "without creating a facial insufficiency," it is Ninth Circuit precedent, not that of the Supreme Court, that has held that there are "facial insufficienc[ies]" that "do[] not call for suppression"); *Gray*, 521 F.3d at 524-25 (agreeing that the Supreme Court has "never reached" the issue of how to treat a wiretap order that omits the name of the authorizing Justice Department official); *Radcliff*, 331 F.3d at 1162 (agreeing that the Supreme Court has only endorsed the core concerns test in the context of Subsection (i) suppression motions).  On their face, the Supreme Court's decisions stand for the proposition that suppression motions under Subsection (i) require a "broad inquiry into the government's intercept procedures to determine whether the government's actions transgressed the core concerns of the [wiretap] statute," whereas motions to suppress under Subsection (ii) require only "a mechanical test; either the warrant is facially sufficient or it is not." [5]  *Glover*, 736 F.3d at 513; *see also United States v. Lambus*, 251 F. Supp. 3d 470, 489

---

[4] The Supreme Court has granted certiorari on the question of whether a facial insufficiency in a wiretap order (arising out of the erroneous authorization of interceptions outside the court's territorial jurisdiction) requires suppression under Title III.  In deciding this issue, the Supreme Court is likely to resolve the disagreement among the Circuits relating to the propriety of using the "core concerns" test in assessing the appropriate remedy for a Subsection (ii) violation.  *Dahda v. United States*, 852 F.3d 1282 (10th Cir. 2017), *cert. granted*, 138 S.Ct. 356 (U.S. Oct. 16, 2017).

[5] If the Court elects to graft the Subsection (i) "core concerns" test onto its analysis under Subsection (ii), despite the D.C. Circuit's reasoning in *Glover* and *Scurry*, suppression is still

(E.D.N.Y. 2017) (Weinstein, J.) (citing *Glover* for the proposition that "suppression is the mandatory remedy when evidence is obtained pursuant to a facially insufficient warrant.  There is no room for judicial discretion.").

This case is on all fours with *Scurry*.  As in *Scurry*, the lack of an authorizing official's name in the April 7 Wiretap Order renders the Order "facially insufficient" and requires that the recordings intercepted pursuant to that Order be suppressed.

## II.   COMMUNICATIONS INTERCEPTED PURSUANT TO SUBSEQUENT WIRETAP ORDERS ARE DERIVATIVE EVIDENCE THAT MUST BE SUPPRESSED.

### A.   Evidence Derived From Wiretap Orders That Relied Upon Communications Obtained Via An Invalid Order Must Be Suppressed.

When a wiretap order is found to be "insufficient on its face," all intercepted communications and any "evidence derived therefrom" must be suppressed.  *See* 18 U.S.C. § 2518(10)(a)(ii); 18 U.S.C. § 2515.  Courts have long recognized that Section 2518 of the Wiretap Act codifies the fruits of the poisonous tree doctrine.  *Giordano,* 416 U.S. at 532-33, 94 S.Ct. at 1834-35; *United States v. Marion*, 535 F.2d 697, 701 (2d Cir. 1976) (interpreting 18 U.S.C. § 2518(10)(a) to include "the contents or fruits of an intercepted communication.").  For this reason, suppression under Section 2518(10)(a) of the Act extends to communications that were "secured under [subsequent] court orders" as long as the applications submitted by the Government for those subsequent orders "detailed at considerable length the contents of

---

required here because the April 7 Wiretap Order's failure to identify an authorizing Justice Department official implicates a "core concern" of Title III.  As the Supreme Court has recognized, Congress, in passing Title III, wanted to "make doubly sure that the statutory wiretap authority be used with restraint." *Giordano*, 416 U.S. at 515, 94 S.Ct. at 1820.  Title III's "order identification" requirement "facilitates additional oversight" by ensuring that "the parties executing the order," not just the courts, can satisfy themselves that the wiretap was properly approved.  *Scurry*, 821 F.3d at 10-11.

conversations intercepted pursuant to the [prior invalid] order." *Giordano*, 416 U.S. 505, 511 n.2, 94 S.Ct. at 1824; *see also id.* at 533 n.19, 1835 (suppressing evidence obtained from subsequent order where Government's application attached "the logs of telephone conversations monitored" under the previous, invalid wiretap order); *see also In re United States in Order Authorizing the Use of a Pen Register*, 416 F. Supp. 800, 802 n.4 (S.D.N.Y. 1976), *aff'd in relevant part*, *United States v. New York Tel. Co.*, 434 U.S. 159, 166 n. 9, 98 S.Ct. 364, 368 (1977).

      **B.**      **The Communications Obtained From The Subsequent Wiretap Orders Constitute Derivative Evidence That Must Be Suppressed.**

      The wiretap applications submitted by the Government on May 5th, June 19th, July 19th, August 7th, August 22nd, August 30th, and September 20th each "detail[] at considerable length," *see Giordano*, 416 U.S. at 511 n.2, 94 S.Ct. at 1824, the communications intercepted pursuant to the facially insufficient April 7 Wiretap Order. *See supra* at 3 (describing Government's reliance on communications from April 7 Wiretap Order in its subsequent applications). Each of these wiretap applications were granted. (Ex. 4 (May 5 Order); Ex. 6 (June 19 Order); Ex. 8 (July 19 Order); Ex. 10 (August 7 Order); Ex. 12 (August 22 Order); Ex. 14 (August 30 Order); Ex. 16 (September 20 Order) (collectively, the "Subsequent Wiretap Orders")). Because the Subsequent Wiretap Orders were each based on communications intercepted pursuant to the defective April 7 Wiretap Order, the Subsequent Wiretap Orders are "tainted by the use of unlawfully intercepted communications" and the communications captured pursuant to those Orders "must be suppressed."[6] *Giordano*, 416 U.S. at 511 n.2, 533, 94 S.Ct. at

---

[6] Even if this Court were to find that these communications are admissible against Mr. Code and Mr. Gatto, they are inadmissible in a joint trial with Mr. Dawkins. *See United States v. Figueroa*, 618 F.2d 934, 940 (2d Cir. 1980) (reversing all three convictions where the Government was "trying to enjoy the benefit of having put [the defendant against whom

1824, 1835 ("communications intercepted under the extension order [of an invalid wiretap] are derivative evidence and must be suppressed").

      **C.**    **Mr. Dawkins Is Entitled To The Transcripts Of The Grand Jury's Proceedings Because the Indictment Against Him May Be Based Upon Communications Obtained Pursuant to the April 7 Wiretap Order and the Subsequent Wiretap Orders.**

      In *United States v. Tane*, the Second Circuit explained that in instances where an indictment against a defendant is based "almost exclusively" on evidence derived from an invalid wiretap, dismissal of the indictment is appropriate. 329 F.2d 848, 854 (2d Cir. 1964); *see also United States v. Magaddino*, 496 F.2d 455, 462 (2d Cir. 1974) (indictment dismissed where the Government failed to demonstrate that defendants' indictment rested on evidence beyond that obtained via illegal wiretap).

      Mr. Dawkins has reason to believe that the Grand Jury's decision to indict him was based substantially on communications intercepted pursuant to the April 7 Wiretap Order, or evidence derived therefrom. (*See* Ind. at ¶¶ 26(a), 26(b), 26(c), 31, 32 (describing calls intercepted pursuant to the April 7 Wiretap Order or the Subsequent Wiretap Orders)). However, Mr. Dawkins cannot assess whether he has a basis for moving to dismiss the Indictment against him unless he is able to review the transcripts of the Grand Jury's proceedings to ascertain whether his indictment was based "almost exclusively" upon these improper communications. *Tane*, 329 F.2d at 853. Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) permits a court to disclose a grand jury's proceedings at the request of a defendant who has demonstrated "that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Because the Indictment against Mr. Dawkins may have been based "almost exclusively"

---

evidence was inadmissible] on trial with two co-defendants and then offering evidence against him on grounds available, if at all, only to his co-defendants").

upon evidence derived from an invalid wiretap, Mr. Dawkins has demonstrated sufficient cause under Rule 6(e)(3)(E)(ii) to merit disclosure of the transcripts of the Grand Jury's proceedings.

## <u>CONCLUSION</u>

This Court should (a) suppress all communications intercepted pursuant to the April 7 Wiretap Order, as well as all evidence derived therefrom, including all communications intercepted pursuant to the Subsequent Wiretap Orders; and (b) authorize the disclosure of the Grand Jury's proceedings to Mr. Dawkins under Rule 6(e)(3)(E)(ii).

**HANEY LAW GROUP PLLC**

By: <u>/s/ Steven A. Haney</u>
Steven A. Haney
3000 Town Center Drive, Suite 2570
Southfield, Michigan 48075
(248) 414-1470
steve@haneygroup.net

*Attorneys for Defendant Christian Dawkins*

16