# UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                        :

UNITED STATES OF AMERICA,         :

 v.                          :

JAMES GATTO,             :  Case No. 17-cr-00686 (LAK)
a/k/a "Jim,"             :
MERL CODE, and         :
CHRISTIAN DAWKINS,      :

        Defendants.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## <u>PROPOSED JURY CHARGES</u>
## <u>ON BEHALF OF ALL DEFENDANTS</u>

**NEXSEN PRUET LLC**
William W. Wilkins
Mark C. Moore
Andrew A. Mathias
55 E. Camperdown Way, Suite 400
Greenville, South Carolina 29601
(864) 370-2211

**OGLETREE, DEAKINS, NASH, SMOAK**
**& STEWART, P.C.**
Merl F. Code
300 North Main Street
Greenville, South Carolina, 29601
(864) 271-1300

*Attorneys for Defendant Merl Code*

**WILLKIE FARR & GALLAGHER LLP**
Michael S. Schachter
Casey E. Donnelly
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

*Attorneys for Defendant James Gatto*

**HANEY LAW GROUP PLLC**
Steven A. Haney
3000 Town Center Drive, Suite 2570
Southfield, Michigan 48075
(248) 414-1470

*Attorneys for Defendant Christian Dawkins*

## I. GENERAL INSTRUCTIONS

The defendants, James Gatto, Merl Code, and Christian Dawkins, request this Court's standard instructions, as given by this Court in *United States v. Blaszczak*, Case No. 17-cr-357 (LAK), Dkt. 331 (S.D.N.Y. April 27, 2018), on Duty of the Court (Tr. 3998:17-3999:6); Duty of the Jury (Tr. 3998:9-16); Duty of Impartiality (Tr. 3999:8-14, 4019:14-4020:10); Presumption of Innocence and Burden of Proof (Tr. 3936:19-3937:9); Reasonable Doubt (Tr. 3937:10-3938:3); Direct and Circumstantial Evidence (Tr. 3999:21-4001:24); Witness Credibility (Tr. 4002:17-4007:24); Defendants' Right Not to Testify (4012:10-20); Selection of Foreperson (Tr. 4015:18-25), Right to See Exhibits and Hear Testimony and Communications with the Court (4017:12-4019:13); and Verdict, Need for Unanimity, and Duty to Consult (Tr. 4013:24-4014:15, 4016:21-4017:11).

## II. THE CHARGES

## INSTRUCTION NO. 1

*Summary of the Charges; Multiple Counts/Multiple Defendants*

With these preliminary instructions in mind, let us turn to the specific charges against the defendants, James Gatto, Merl Code, and Christian Dawkins.  These charges were originally set forth in what is called an indictment, which is merely an accusation.  It is not evidence of the crimes charged.  It is not proof of a defendant's guilt.  The indictment is merely a method or procedure under the law whereby persons accused of crimes by the grand jury are brought into court to have their case tried by a trial jury, such as yourselves.  Therefore, the existence of the indictment must be given no evidentiary value but should be treated by you as an accusation.  No weight or significance whatsoever is to be given to the fact that an indictment has been brought against the defendants.

The indictment in this case contains a total of three counts, and each count charges a different crime.  I will, for convenience, refer to each charge or count by its number as it appears in the indictment.  But there is no significance to the order of these numbers, and indeed my instructions will follow a different order than the order in which the various counts appear in the indictment.

Count One alleges that from at least 2015 up to and including November 2017, the three defendants, James Gatto, Merl Code, and Christian Dawkins, conspired—that is, agreed—to engage in a scheme to defraud North Carolina State University, the University of Louisville, the University of Kansas, and the University of Miami through the use of interstate wires.  Count Two alleges that from at least May 2017 up to and including September 2017, Mr. Gatto, Mr. Code, and Mr. Dawkins engaged in a scheme to defraud the University of Louisville through the

use of interstate wires.  Count Three alleges that from at least October 2016 up to and including November 2017, James Gatto engaged in a scheme to defraud the University of Kansas through the use of interstate wires.

In reaching your verdict, bear in mind that guilt is individual.  You must, as a matter of law, consider each count of the indictment and each defendant's involvement in that count separately, and you must return a separate, unanimous verdict on each defendant for each count in which he is charged.  Your verdict of guilty or not guilty must be based solely upon the evidence against each defendant.  The case against each defendant, on each count, stands or falls on the proof or lack of proof against that defendant alone.  Your verdict as to any defendant on any count should not control your decision as to any other defendant or any other count.  For example, your verdict as to Mr. Dawkins should be limited to the evidence presented against Christian Dawkins only and how that evidence relates to those charges against him.  The same is true for Mr. Gatto and Mr. Code.  No other considerations are proper.

INSTRUCTION NO. 2

*Wire Fraud (Counts Two and Three)*

Let us turn to the elements of the charges against Mr. Gatto, Mr. Code, and Mr. Dawkins. As I noted earlier, Count One charges the defendants with conspiracy to commit wire fraud, but we will first discuss Counts Two and Three, which charge the defendants with the substantive crime of wire fraud, as this will simplify our subsequent discussion of the conspiracy count.

Count Two alleges that the three defendants, Mr. Gatto, Mr. Code, and Mr. Dawkins, engaged in a scheme to defraud the University of Louisville through the use of interstate wires. Count Three alleges that Mr. Gatto engaged in a scheme to defraud the University of Kansas through the use of interstate wires.  To sustain its burden of proof with respect to the charge of wire fraud under Counts Two and Three, the government must prove each of the following elements beyond a reasonable doubt:

First, that there existed a scheme to defraud these specific Universities of money or property by means of false or fraudulent pretenses, representations, or promises; [1]

---

[1] *United States v. Males*, 459 F.3d 154, 157 (2d Cir. 2006) ("It is well established that the language in § 1343, 'scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,' is not to be read in the disjunctive. …[T]he Supreme Court[] [has] command[ed] that the statute be read conjunctively to require that the defendant not only devise a scheme or artifice, but also use that scheme or artifice to obtain money or property."); *see also United States v. Davis*, Case No. 13-923 (LAP), Dkt. 88, Tr. of Jury Charge, at 1132:1-5 (S.D.N.Y. Aug. 10, 2016) (instructions given on closely analogous wire fraud and conspiracy to commit wire fraud charges which were premised on the theory that defendant-contractors made misrepresentations to the victim, the Port Authority, causing it (1) actual economic harm, in the form of cost overruns; and (2) a deprivation of the Port Authority's "right to control" its assets in deciding with which contractors it would have chosen to transact; the *Davis* charges are akin to charges here that defendants schemed to cause the victims, the Universities, (1) actual economic harm, in the form of scholarships; and (2) a deprivation of the Universities' right to control their assets in deciding to which athletes they would have chosen to award scholarships).

Second, that the defendant knowingly and willfully participated in the scheme to defraud these specific Universities, with knowledge of the scheme's fraudulent nature and with the specific intent to defraud;[2] and

Third, that in the execution of the scheme to defraud the Universities, there occurred at least one use of interstate wire communication.[3]

We will consider these three elements in turn:

The first element that the Government must prove beyond a reasonable doubt under Counts Two and Three is the existence of a scheme or artifice to defraud the University of Louisville, with respect to Count Two, and the University of Kansas, with respect to Count Three, of money or property by means of false or fraudulent pretenses, representations, or promises.[4]  A "scheme or artifice" to defraud is a plan, device or course of action that is used to obtain money or property by means of false or fraudulent pretenses, representations or promises.[5]  In other words, a "scheme or artifice to defraud" is any plan or course of action to deprive another of money or property by trick, deceit, deception, or swindle.[6]  The purpose of a wire

---

[2] *L. Sand, et al*, Modern Fed. Jury Inst. 44-3 at 44-4.

[3] *Id.*

[4] *Males*, 459 F.3d at 157 ("It is well established that the language in § 1343, 'scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,' is not to be read in the disjunctive. …[T]he Supreme Court[] [has] command[ed] that the statute be read conjunctively to require that the defendant not only devise a scheme or artifice, but also use that scheme or artifice to obtain money or property."); *see also Davis*, Dkt. 88, Tr. of Jury Charge, at 1132:1-5.

[5] *Males*, 459 F.3d at 157 (approving instruction that defined the phrase "any scheme or artifice to defraud" as "'any plan, device or course of action that deprives another of money or property by means of false or fraudulent pretenses, representations or promises.  It is, in other words, a plan to deprive another of money or property by trick, deceit, deception, swindle or overreaching.").

[6] *Id*. at 157 (approving instruction that defined the phrase "any scheme or artifice to defraud" as "'any plan, device or course of action that deprives another of money or property by means of

fraud scheme must be to injure the victim. [7]  There is no "scheme to defraud" a victim where the scheme's purpose is to help the victim.[8]  With respect to Count Two, the Government alleges that the three defendants schemed to defraud the University of Louisville through the making of false or fraudulent representations to the University of Louisville.  With respect to Count Three, the Government alleges that Mr. Gatto schemed to defraud the University of Kansas through the making of false or fraudulent representations to the University of Kansas.

A representation is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made.[9]  A representation is fraudulent if it was falsely made with the intent to deceive.[10]  If the Government contends that a representation in a contract was fraudulent, it must prove beyond a reasonable doubt that at the time the contracting party made the representation, he or she never intended to honor its terms.[11]  A subsequent violation of

---

false or fraudulent pretenses, representations or promises.  It is, in other words, a plan to deprive another of money or property by trick, deceit, deception, swindle or overreaching.'"); *see also L. Sand,* Inst. 44-4 (a "scheme to defraud is merely a plan to deprive another of money or property by trick, deceit, deception, or swindle.").

[7] *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1180-81 (2d Cir. 1970) (the "purpose" of a wire fraud scheme "must be to injure").

[8] *Id.*; *see also United States v. Durham*, 825 F.2d 716, 718 (2d Cir. 1987) (reversing conviction and recognizing "a criminal defendant's right to a charge which reflects the defense theory."); *United States v. Alfonso-Perez*, 535 F.2d 1362, 1365 (2d Cir. 1976) ("a defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible.").

[9] *L. Sand,* Inst. 44-4 at 44-8; *Davis*, Dkt. 88, Tr. of Jury Charge at 1132:18-21.

[10] *L. Sand,* Inst. 44-4 at 44-8; *Davis*, Dkt. 88, Tr. of Jury Charge at 1132:18-21.

[11] *United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 659-662 (2d Cir. 2016) (holding that a "[f]ailure to comply with a contractual obligation is only fraudulent when the promisor never intended to honor the contract" and that a "subsequent breach" of a contractual promise, even where "willful and intentional" is not fraud.).

a contractual representation, even where that violation is intentional, does not convert the contractual representation into a false representation.[12]

The false representation must relate to a material fact or matter.[13]  The Government must prove materiality from the perspective of the entity to which the representation was directed.[14] This means that if you find a particular representation of fact to have been false, you must then determine whether it was material by asking whether the representation was capable of influencing the decision of the decision-maker to whom it was addressed.[15]  Specifically, if you find that representations made to the University of Louisville, with respect to Count Two, or made to the University of Kansas, with respect to Count Three, by the college athletes and/or their parents were false, you must then determine whether those representations were capable of influencing the decision by those specific Universities to provide a scholarship to Brian Bowen Jr., with respect to Count Two, or Billy Preston, with respect to Count Three.[16]

---

[12] *Id.*

[13] *Neder v. United States*, 527 U.S. 1, 16, 25, 119 S. Ct. 1827, 1841 (1999) ("we hold that materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes.").

[14] *Id.* at 16, 119 S. Ct. at 1837 ("a false statement is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed.'") (quoting *United States v. Gaudin*, 515 U.S. 506, 509, 115 S. Ct. 2310, 2313 (1995)).

[15] *Id.*; *see also United States v. Weaver*, 860 F. 3d 90, 94 (2d Cir. 2017) (one "looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation" when assessing materiality); *United States v. Litvak*, 808 F.3d 160, 172-74 (2d Cir. 2015) (reversing conviction where, even though defendant's misstatements may have negatively impacted the [victim's] investments, the evidence failed to demonstrate that they were capable of influencing "a *decision* of the [*victim*]" given the victim's chosen investment structure) (emphasis in original).

[16] Second Superseding Indictment ("S2") ¶¶ 51, 53.

In determining whether the representations described in the Indictment were material to the University of Louisville, with respect to Count Two, or the University of Kansas, with respect to Count Three, you may consider evidence demonstrating that false representations concerning recruits' eligibility to compete in NCAA-sponsored basketball competitions are common.[17]

In addition to proving that a representation was false or fraudulent and related to a material fact, the government must also prove that the purpose of the alleged scheme to defraud the Universities was to obtain money or property from these Universities.[18]  A defendant cannot

_____

[17] *See Litvak*, 808 F.3d at 182 (expert testimony that statements of sell-side salesmen or traders concerning the value of a certain securities or the price at which the broker-dealer acquired it "are generally biased, often misleading, and unworthy of consideration in trading decisions" is admissible to demonstrate such statements are not material to a professional investment manager's decision-making); *United States v. Connolly et al.*, Case No. 16-cr-00370 (CM), Dkt. 145, Decision and Order on Defendants' Pretrial Motions (S.D.N.Y. October 19, 2017) (evidence of statements made by the British Bankers' Association to defendants and others about LIBOR "may also be admissible to establish whether any of the victims were aware that submitting banks took their own trading positions into account when offering their LIBOR submissions," which could bear upon "whether the victims cared one way or another (which goes to materiality)."); *see also United States v. Lindsey*, 850 F.3d 1009, 1016 (9th Cir. 2017) (evidence of general lending standards in the mortgage industry is admissible to disprove materiality of purportedly false representations in loan documents).

[18] *United States v. Walters*, 997 F.2d 1219, 1227 (7th Cir. 1993) (reasoning, based on a textual analysis, that the "scheme or artifice to defraud" clause and the "obtaining money or property" clause of the mail fraud statute "contemplate a transfer" of money or property from the victim to the defendant and therefore holding that "only a scheme to obtain money or other property from the victim" violates the mail and wire fraud statutes); *United States v. Baldinger*, 838 F.2d 176, 180 (6th Cir. 1988) (wire fraud statue only "reach[es] schemes that have as their goal the transfer of something of economic value to the defendant."); *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000) (wire fraud requires "(i) a scheme to defraud (ii) *to get money or property* (iii) furthered by the use of interstate mail or wires.") (emphasis added); *United States v. Fiumano*, No. S3 14 Cr. 516, 2016 WL 1629356, at *2 (S.D.N.Y. Apr. 25, 2016) (Keenan, J.) (wire fraud requires "(1) a scheme to defraud *victims* (2) by obtaining *their* money or property (3) furthered by the use of interstate wires.") (emphasis added); *see also Sekhar v. United States*, 570 U.S. 729, 732, 734, 133 S. Ct. 2720, 2725 (2013) (finding, based on principle that "Congress intends to incorporate the well-settled meaning of the common-law terms it uses," that requirement under Hobbs Act that defendant "obtain" property requires the Government to prove "not only the deprivation, but also the acquisition of property" by the defendant); *Honeycutt v. United*

be found to have "obtained" money or property from the Universities unless he himself acquired the property; it is not enough for you to find that some other participant or conspirator in the scheme acquired the property from the Universities.[19]  Property can include both tangible property interests, such as a valuable possession, or an intangible property interest, such as confidential business information, that can be bought, sold, or transferred to another.[20]  However, property does not include information that lacks economic value while possessed by the alleged

---

*States*, 137 S. Ct. 1626, 1632 (2017) (the common law definition of "obtain," which controls the meaning of the word "obtain" for purposes of the criminal forfeiture statute, means to "bring into one's own possession; to procure, esp. through effort"); *but see United States v. Finazzo*, 850 F.3d 94, 107, n.15, 111 (2d Cir. 2017) (deciding, before *Honeycutt*, that the common-law definition of "obtain" employed by the Hobbs Act does not apply to the wire fraud statute).

[19] *See Honeycutt*, 137 S. Ct. at 1630, 1632 (because "[n]either the dictionary definition nor the common usage of the word 'obtain' supports the conclusion than an individual 'obtains' property that was acquired by someone else," a defendant is not liable under the criminal forfeiture statute "for property that his co-conspirator derived from the crime but that the defendant himself did not acquire.").

[20] *Carpenter v. United States*, 484 U.S. 19, 26-28, 108 S. Ct. 316, 320-22 (1987) ("Confidential information acquired or compiled by a corporation in the course and conduct of its business is a species of property to which the corporation has the exclusive right and benefit, and which a court of equity will protect through the injunctive process or other appropriate remedy.") (citing 3 W. Fletcher, Cyclopedia of Law of Private Corporations § 857.1, at 260 (rev. ed. 1986)); *Cleveland v. United States*, 531 U.S. 12, 23-24, 121 S.Ct. 365, 372-73 (2000) (rejecting argument that victim had a "property interest" in its "right to choose the persons to whom it issues [licenses]," because victim "d[id] not 'sell' video poker licenses in the ordinary commercial sense," and noting that a "right to select" or a "right to exclude" who one does business with is a property right only where that right "derives from [the victim's] ownership of a trademark, brand name, business strategy, or other product that it may trade or sell in the open market."); *see also Sekhar*, 540 U.S. at 732, 734-736, 133 S. Ct. at 2724-2726 (finding, based on principle that "Congress intends to incorporate the well-settled meaning of the common-law terms it uses," that the word "property" in the Hobbs Act refers to something that is "*transferable*—that is, capable of passing from one person to another" or that can be "exercised, transferred or sold.") (emphasis in original).

victim and cannot be bought, sold or transferred to another.[21]  Moreover, the mere right to

receive truthful information is not property for purposes of the wire fraud statute.[22]

 If you find that the government has sustained its burden of proof that a scheme to defraud

the Universities did exist as charged, you next should consider the second element of the charge

of wire fraud.  The second element that the government must prove under Counts Two and Three

is that the defendant you are considering participated in the scheme to defraud the Universities

knowingly, willfully, and with the specific intent to defraud the Universities of money or

property.[23]

---

[21] *See Cleveland*, 531 U.S. at 25-27, 121 S. Ct. at 374 ("We conclude that § 1341 requires the object of the fraud to be 'property' in the victim's hands and that a Louisiana video poker license in the State's hands is not 'property' under § 1341.").

[22] *United States v. Regan*, 713 F. Supp. 629, 638 (S.D.N.Y. 1989) ("Stated plainly, however, the government claims no more than that [defendants] had an obligation to disclose information regarding the defendants' scheme to [the victim] and failed to do so. By calling the defendants' knowledge confidential business information, the government dresses its claim in the language of property interests, but the actual character of the claim is unchanged. Defendants may have defrauded [the victim] of an intangible right to accurate information regarding [defendant's] holdings of Mattel securities, but this does not properly allege a deprivation of a property interest."); *see also Chiarella v. United States,* 445 U.S. 222, 232-233, 100 S. Ct. 1108, 1117 (1980) (confirming that there is no "parity of information" rule that applies in "impersonal market transactions."); *United States v. Brennan*, 183 F.3d 139, 149-150 (2d Cir. 1999) (describing mail fraud prosecution as "seriously problematic" where government tried to impose criminal liability for "nondisclosures to sophisticated corporations in arms-length contractual insurance relationships"); *United States v. Sadler*, 750 F.3d 585, 591 (6th Cir. 2014) ("Congress amended the fraud statutes to cover some intangible rights," but "[i]t did not stretch the statute to cover the right to accurate information before making an otherwise fair exchange."); *United States v. Slay*, 858 F.2d 1310, 1316 (8th Cir. 1988) ("The information which the prosecution labels 'property' was at all times in the possession of the defendants, and the object of their alleged scheme was to withhold, rather than to obtain, this information from the [victim]. Withholding valuable information from the [victim] is not the same thing as depriving the [victim] of its  property and only the latter conduct violates the mail fraud statutes."); *but see Finazzo*, 850 F.3d at 108 ("Property includes intangible interests such as the right to control the use of one's assets. This interest is injured when a victim is deprived of potentially valuable economic information it would consider valuable in deciding how to use its assets.")

[23] *L. Sand,* Inst. 44-5 at 44-27; *Davis*, Dkt. 88, Tr. of Jury Charge at 1134:19-25.

In order to find that a defendant participated in the alleged scheme to defraud the Universities you must find that the defendant engaged in it by taking some affirmative step to help it succeed.[24]  Mere association with people who were participating in a scheme to defraud the Universities, even if the defendant knew what they were doing, is not participation.[25]

Let me note that evidence has been admitted relating to NCAA regulations and bylaws which govern the conduct of college athletes and coaches.  The NCAA is a private association and its regulations and bylaws are not criminal laws.[26]  Providing financial help to families of athletes in violation of the NCAA regulations and bylaws is not itself a crime.[27]  Whether the defendants, the college athletes, their parents, and/or their coaches complied with the NCAA requirements or not is not determinative of the innocence or guilt of any defendant in this case.[28]  The NCAA regulations and bylaws have been offered for the limited purpose of explaining the Universities' certification process for college athletes and you may consider this evidence for that purpose only.[29]

As I mentioned, you must also find that the defendant you are considering acted knowingly.  To act "knowingly" means to act intentionally, deliberately, and voluntarily, rather than by mistake, accident, ignorance, or carelessness.[30]  This includes, among other things, a

---

[24] *Davis*, Dkt. 88, Tr. of Jury Charge at 1135:1-4.

[25] *Id.*

[26] Adapted from *Davis*, Dkt. 88, Tr. of Jury Charge at 1139:18 – 1140:3.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Blaszczak*, Dkt. 331, Tr. of Jury Charge at 3959:4-5, 3970:2-4.

requirement that the government prove that each defendant have knowledge that he is engaged in a fraudulent scheme.[31]

To act "willfully" means to act deliberately and with a purpose to do something the law forbids.[32]

To act with an "intent to defraud" means to act knowingly and with the specific intent to deceive, for the specific purpose of causing some financial harm or property loss to the Universities.[33]  The government need not prove that the Universities were actually harmed, only that such harm was contemplated.[34]  If you find that the defendant you are considering acted with the specific purpose of depriving the Universities out of potentially valuable economic information that affected the University's economic calculus when entering into a business transaction, you may find that the defendant acted with the intent to defraud the Universities out of their right to control their assets.[35]  I wish to caution you however:  a mere finding that the Universities would not have awarded these scholarships but for the alleged false statements is not

---

[31] *United States v. Allen*, Case No. 14-cr-272 (JSR), Dkt. 146, Jury Charge, Instruction No. 11, at 17 (S.D.N.Y. Nov. 4, 2015) ("to act 'knowingly'…includes, among other things, a requirement that the defendant have knowledge that he was engaged in a fraudulent scheme.").

[32] *Blaszczak*, Dkt. 331, Tr. of Jury Charge at 3959:6-8, 3970:2-4; *L. Sand,* Inst. 44-5 at 44-27; *Davis*, Dkt. 88, Tr. of Jury Charge at 1135:7-9.

[33] *L. Sand,* Inst. 44-5 at 44-27; *Davis*, Dkt. 88, Tr. of Jury Charge at 1135:10-14.

[34] *Davis*, Dkt. 88, Tr. of Jury Charge at 1135:10-14.

[35] *United States v. Binday*, 804 F.3d 558, 570-571 (2d Cir. 2015) ("Our cases have drawn a fine line between schemes that do no more than cause their victims to enter into transactions they would otherwise avoid—which do not violate the mail or wire fraud statutes—and schemes that depend for their completion on a misrepresentation of an essential element of the bargain— which do violate the mail and wire fraud statutes.  Thus we have repeatedly rejected application of the mail and wire fraud statues where the purported victim received the full economic benefit of its bargain.  But we have upheld convictions for mail and wire fraud where the deceit affected the victim's economic calculus or the benefits and burdens of the agreement.").

enough to find that defendants sought to defraud the Universities out of their right to control their assets.[36]  You must find that the information withheld from the Universities by means of the false statement had some independent economic value or bore on the ultimate economic value of a business transaction.[37]

Let me further caution you:  the government cannot satisfy its burden on this element by merely demonstrating that the defendant you are considering participated in the scheme with some knowledge or recognition of its capacity to cause harm or deprivation to the Universities.[38] Instead, the government must prove that the defendant acted with the specific purpose of causing

---

[36] *Id.* (to prove contemplated harm, "[i]t is not sufficient" for the Government to show "merely that the victim would not have entered into a discretionary economic transaction but for the defendant's misrepresentations.  The 'right to control one's assets' does not render every transaction induced by deceit actionable under the mail and wire fraud statutes.").

[37] *United States v. Rossomando*, 144 F.3d 197, 201 (2d Cir. 1998) ("In cases resting upon the so-called 'right to control' theory of mail fraud, the information withheld either must be of some independent value or must bear on the ultimate value of the transaction.") (citing *United States v. Dinome*, 86 F.3d 277, 280, 284 (2d Cir. 1996).

[38] *United States v. Gabriel*, 125 F.3d 89, 96-7 (2d Cir. 1997) ("Defendants contend that because the [jury] instructions require[d] only that they have 'some realization' that the scheme was fraudulent and 'recogni[tion]' that the scheme had the capacity to cause harm, the instructions did not require the jury to find that they intended to cause harm.  We agree.") (*overruled in part on other grounds by Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005)).

some financial harm or property loss to the Universities.[39]  The  money or property deprivation

must be a goal of the plot, not just an inadvertent consequence of it.[40]

In this case, the defendants contend that their purpose, if any, in facilitating the alleged

payments to the families of the student-athletes referenced in the indictment was not to harm the

Universities, but to help them.  Because a necessary element of wire fraud is a specific intent to

defraud, there can be no "scheme to defraud" where the scheme's purpose is to benefit the

victim.[41]  Accordingly, if you find that the defendant you are considering intended to help either

the University of Louisville, with respect to Count Two, or the University of Kansas, with

respect to Count Three, you must find that defendant not guilty.

Moreover, I must advise you that a defendant cannot be found to have an intent to

defraud when he engages in misleading conduct that is otherwise lawful, so long as he is

following the instructions of an appropriate corporate agent who appears to the defendant to be

---

[39] *Id.* (the verb "'[c]ontemplate' is subject to at least two possible meanings—it could mean 'to think about' or it could mean 'to have in view as a purpose…to intend.'  Our prior decisions have indicated repeatedly that a defendant must have 'contemplated' harm, and when we have used that term, we have clearly meant the latter definition (to intend) rather than the former (to think about)."); *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987) ("Although the government is not required to prove actual injury, it must, at a minimum, prove that defendants *contemplated* some actual harm or injury to their victims.  Only a showing of intended harm will satisfy the element of fraudulent intent.").

[40] *Regan*, 713 F. Supp. at 637 (Government must prove that wire fraud defendants "intended to deprive their victims of money or property, not just that such a deprivation could be theoretically characterized as a necessary consequence of their scheme.").

[41] *Regent Office Supply Co.*, 421 F.2d at 1180-81 (the "purpose" of a wire fraud scheme "must be to injure"); *United States v. D'Amato*, 39 F.3d 1249, 1259-60 (2d Cir. 1994) (reversing wire fraud conviction where corporate employees authorized the defendant's misrepresentations and defendant believed his actions were for the "benefit" of the company); *see also Durham*, 825 F.2d at 718 (reversing conviction and recognizing "a criminal defendant's right to a charge which reflects the defense theory."); *Alfonso-Perez*, 535 F.2d at 1365 ("a defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible.").

un-conflicted and acting in good faith, rather than for self-enrichment.[42]   Whether or not the

agent was actually acting in good faith does not matter.   What matters is the defendant's

perception of the agent's interest.   With respect to this case, that means that you must find the

defendant you are considering not guilty if you determine that the defendant believed the

University employees, including coaches, were acting in good faith for the benefit of the

University and not solely for their own self-interest, and that these University employees

explicitly or implicitly authorized or condoned the defendant's violation of NCAA rules.[43]

Since an essential element of wire fraud is the intent to defraud, it follows that good faith

on the part of a defendant is a complete defense.   Material false representations do not amount to

fraud unless done with fraudulent intent.[44]   An honest belief that the Universities were aware of

the falsity of the alleged false representation is a good defense, however inaccurate that belief

may turn out to be.[45]   In addition, however misleading or deceptive a plan may be, it is not

fraudulent if it was devised or carried out in good faith.[46]   In other words, the law is not violated

---

[42] *D'Amato*, 39 F.3d at 1258, 1260 (reversing wire fraud conviction where corporate employees, who appeared to be unconflicted and acting in good faith, authorized the defendant's misrepresentations).

[43] *Id.*; *see also Restatement* (Second) *of Agency* §236 & comment b (1957) ("The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act otherwise is within the service[.])

[44] *L. Sand,* Inst. 44-5 at 44-27.

[45] Adapted from *L. Sand,* Inst. 44-5.

[46] *L. Sand,* Inst. 44-5 at 44-27.

if a defendant whom you're considering held an honest belief that his actions were not in furtherance of any unlawful scheme.[47]

For example, if you determine that the defendant you are considering believed, in good-faith, that the NCAA rules permitted him to act as he did, that good-faith belief precludes a finding of criminal liability and you must find the defendant not guilty.[48]  The defendants, however, have no burden to establish a defense of good faith.  The burden is on the government to prove fraudulent intent and the lack of good faith beyond a reasonable doubt.[49]

There is another consideration to bear in mind in deciding whether or not the defendants acted in good faith.  If you find that the defendant participated in the scheme for the purpose of causing some immediate financial loss to the Universities, an honest belief on the part of the defendant that everything would work out so that ultimately no one would lose any money does

---

[47] *Blaszczak*, Dkt. 331, Tr. of Jury Charge at 3965:4-6, 3970:11-13.

[48] *United States v. Regan*, 937 F.2d 823, 825-827 (2d Cir. 1991) (defendant was entitled to jury instruction explaining that his good-faith belief that a particular tax rule authorized him to act as he did was a complete defense to criminal liability, even where the defendant's interpretation of the rule was not "correct or even objectively reasonable."); *United States v. Connolly*, S1 16 Cr. 370 (CM), 2018 WL 2411216, at *2 (S.D.N.Y. May 15, 2018) ("in order to prove falsity" under the wire fraud statute, "the Government must negate *any reasonable interpretation* of the BBA's [LIBOR rules] that would render . . . the Deutsche Bank USD LIBOR submissions . . . not false and not misleading.") (emphasis in original).

[49] *United States v. Alkins*, 925 F.2d 541, 549-50 (2d Cir. 1991) ("Good faith is a complete defense to a mail fraud charge.  If an individual believes that the information set forth in a mailing is true, it follows that he cannot have the requisite intent to defraud.  The government must prove lack of good faith beyond a reasonable doubt."); *United States v. Dupre*, 339 F. Supp. 2d 534, 539-40 (S.D.N.Y. 2004) *aff'd*, 462 F.3d 131 (2d Cir. 2006) (holding that for purposes of wire fraud, "even false representations or statements or omissions of material facts do not amount to a fraud unless done with fraudulent intent.  However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith."); *United States v. Levis*, 488 F. App'x 481, 486 (2d Cir. 2012) (quoting jury instruction stating "[g]ood faith is a defense to a charge of fraud . . . .  An honest belief in the truth of a representation is a good defense no matter how inaccurate the statement may turn out to be.").

not require a finding by you that the defendant acted in good faith.[50]  However, if you determine that a defendant was aware that he was withholding information from the Universities but believed that the Universities would not lose any money as a result, you should find that the defendant lacked criminal intent and is not guilty.[51]

To conclude on the second element of wire fraud, if you find that the defendant you are considering was not a knowing and willful participant in the scheme to defraud the Universities or that he lacked the specific intent to defraud the Universities, you should find the defendant not guilty.  On the other hand, if you find that the government has established beyond a reasonable doubt not only the first element, namely, the existence of the scheme to defraud the Universities, but also the second element, that the defendant you are considering was a knowing and willful participant who acted with the specific intent to defraud the Universities of money or property, and if the government also establishes the third element, about which I'm going to instruct you in a few moments, then you will have a sufficient basis upon which to convict that defendant.[52]

The third and final element that the government must prove beyond a reasonable doubt in order to meet its burden on these wire fraud counts is that interstate wires were used in furtherance of the scheme to defraud the University of Louisville, with respect to Count Two, or

---

[50] *Rossomando*, 144 F.3d at 200-01 (explaining that Judge Sand's "model" jury instructions regarding good faith "appear[] to be at odds with the requirement that a defendant must have intended to harm his victim in order to be guilty of mail fraud" and clarifying that a good-faith instruction should "seek to convey" that "where some immediate loss to the victim is contemplated by a defendant, the fact that the defendant believes (rightly or wrongly) that he will 'ultimately' be able to work things out so that the victim suffers no loss is no excuse for the real and immediate loss contemplated to result from defendant's fraudulent conduct.").

[51] *Id.* at 200-01, n.5 ("If [defendant was aware that he was withholding information from [the victim] but believed that the [victim] would not lose any money as a result, his defense that he lacked the requisite intent for mail fraud would have been legitimate.").

[52] *L. Sand,* Inst. 44-5 at 44-28.

the University of Kansas, with respect to Count Three.[53]  That includes, without being

exhaustive, phone calls, emails, or text messages.[54]

---

[53] *Blaszczak*, Dkt. 331, Tr. of Jury Charge at 3970:17-22.

[54] *Id.*

INSTRUCTION NO. 3

*Conspiracy (Count One)*

Let us now turn to Count One of the indictment, which charges the defendants with conspiracy to commit wire fraud.  In particular, Count One charges that, from at least in or about 2015, up to and including in or about November 2017, Mr. Gatto, Mr. Code, and Mr. Dawkins, along with others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud by engaging in a scheme to defraud North Carolina State University, the University of Louisville, the University of Kansas, and the University of Miami through the use of interstate wires.

I have already instructed you on the elements of the substantive charge of wire fraud.  A conspiracy is an agreement or understanding between two or more people to join together to accomplish some unlawful purpose.[55]  In order to prove a single conspiracy, the prosecution must show that each alleged member agreed to participate in what he knew to be a collective venture directed towards a common goal.[56]  The government must prove that the alleged members of the conspiracy had a single, shared objective.  It is not enough for the government to simply demonstrate similar or parallel objectives between similarly situated people.[57]  If you find that an alleged participant in a conspiracy had an objective that was at cross-purposes with the

---

[55] *L. Sand,* Inst. 19-2 at 19-3; *Davis*, Dkt. 88, Tr. of Jury Charge at 1142:1-3.

[56] *United States v. McDermott*, 245 F.3d 133, 137(2d Cir. 2001) (to prove conspiracy, the government must prove that each member knowingly participated "in a collective venture directed towards a common goal.").

[57] *United States v. Figueroa*, No. 08 CR 749 (ARR), 2010 WL 11463852, at *10 (E.D.N.Y. Mar. 2, 2010) ("What is required is a shared, single objective, not just similar or parallel objectives between similarly situated people.")

objectives of a different alleged participant, you may not find that a conspiracy existed between them.[58]

The offense of conspiracy to commit an illegal act is separate and distinct from the actual commission of the illegal act that is the object of the conspiracy.[59]  In this case, a conspiracy to commit the illegal act of wire fraud is a separate and distinct crime from committing wire fraud, although they are similar.[60]  As I previously instructed you, the charge of wire fraud criminalizes a scheme or artifice to defraud a victim of money or property through false representations, pretenses or promises.  The charge of conspiracy criminalizes an agreement to commit wire fraud.

In order for a defendant to be guilty of conspiracy to violate the law, the Government must prove each of the following two elements beyond a reasonable doubt:

First, that the charged conspiracy existed; and

Second, that at some point the defendant you are considering knowingly and willfully joined and participated in the conspiracy.[61]

The first element of the crime of conspiracy that the government must prove beyond a reasonable doubt is that there existed a conspiracy; that is, the government must prove beyond a reasonable doubt that two or more persons entered the unlawful agreement to commit wire fraud

---

[58] *United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990) ("the goals of all the participants need not be congruent…so long as their goals are not at cross-purposes.").

[59] *L. Sand,* Inst. 19-2 at 19-3; *Davis*, Dkt. 88, Tr. of Jury Charge at 1142:15-19.

[60] Adapted from *L. Sand,* Inst. 19-2.

[61] *L. Sand,* Inst. 19-3 at 19-6; *Davis*, Dkt. 88, Tr. of Jury Charge at 1142:3-9.

charged in the indictment.[62]  It is not enough for you to find the existence of an agreement to

violate the NCAA rules.  That is not a crime.  The government must prove beyond a reasonable

doubt the existence of an agreement specifically to defraud the Universities out of money or

property through false representations.

Let me caution you:  there are no one-man conspiracies.[63]  The crime of conspiracy has

not been committed unless one conspires with at least one true co-conspirator.[64]  It is not enough

for the government to show that the defendant you are considering agreed only with an

undercover agent or government informant to commit the underlying offense, for there is no

agreement on a common purpose in such cases.[65]  Some other person who was not an undercover

---

[62] *L. Sand,* Inst. 19-4 at 19-12; *Davis*, Dkt. 88, Tr. of Jury Charge at 1142:10-14; *see also United States v. Rosenblatt*, 554 F.2d 36, 36-38 (2d Cir. 1977) (reversing conviction on basis that defendant and his alleged co-conspirator never came "to an agreement" concerning "the type of fraud in which they were engaged" and a "general agreement to engage in unspecified criminal conduct is insufficient to identify the essential nature of the conspiratorial plan."); *see also Ingram v. United States*, 360 U.S. 672, 677, 79 S. Ct. 1314, 1319 (1959) (defendant could not have entered into a "conspiracy with a purpose illegal under federal law" where defendant operated a lottery prohibited by state law, but the record contained no evidence that defendant knew the lottery was subject to federal taxes).

[63] *Rogers v. United States*, 340 U.S. 367, 375, 71 S. Ct. 438, 443 (1951) ("at least two persons are required to constitute a conspiracy.").

[64] *United States v. Dumeisi*, 424 F.3d 566, 580 (7th Cir. 2005) ("[t]he elements of the crime [of conspiracy] are not satisfied unless one conspires with at least one true co-conspirator.")") (quoting *United States v. Mahkimetas*, 991 F.2d 379, 383 (7th Cir. 1993)) (quotation marks omitted).

[65] *United States v. Vazquez*, 113 F.3d 383, 387 (2d Cir. 1997) ("A person who enters into [an agreement to conspire] while acting as an agent of the government, either directly or as a confidential informant, lacks the criminal intent necessary to render him a bona fide co-conspirator."); *United States v. Miranda-Ortiz*, 926 F.2d 172, 175 (2d Cir. 1991) ("a person acting as an agent of the government cannot be a coconspirator[.]"); *United States v. Goldberg*, 756 F.2d 949, 958 (2d Cir. 1985) (same); *Reytan v. United States*, No. 99 CR. 214-09(DAB), 04 Civ. 3635(DAB), 2006 WL 1311955, at *4 (S.D.N.Y. May 12, 2006) ("a person acting as an agent of the government cannot be a co-conspirator, because he or she cannot truly agree to conspire."); *see also United States v. Chase*, 372 F.2d 453, 459 (4th Cir. 1967) ("one who acts as

agent or government informant must have entered into the unlawful agreement with the defendant in order for a conspiracy to exist.[66]  In addition, when one of two persons merely pretends to agree, the other party, whatever he may believe, is not in fact conspiring with anyone.[67]

Further, while it is charged that the alleged conspiracy to commit wire fraud against the Universities began in or about 2015 and continued until in or about November 2017, it is not essential that the government prove that the conspiracy started and ended on those specific dates or that it existed throughout the entire period.[68]  Rather, it is sufficient to satisfy the first element that you find that in fact a conspiracy to defraud the Universities was formed and that it existed for any time within the charged period.[69]

In deciding whether the defendants agreed to violate the law of wire fraud, you should consider my instructions on wire fraud.[70]  If you conclude that the government has proved beyond a reasonable doubt that the charged conspiracy to defraud the Universities existed, you must then consider the second element of the crime, which is that the defendant you are considering became a member of the conspiracy to defraud the Universities knowingly, willfully, and voluntarily, and with the intent to further its unlawful purpose or purposes.[71]  The

---

a government agent and enters into a purported conspiracy in the secret role of an informer cannot be a co-conspirator.").

[66] *L. Sand,* Inst. 19-4, at 19-13.

[67] *United States v. Valle*, 807 F.3d 508, 523 (2d Cir. 2015).

[68] *Davis*, Dkt. 88, Tr. of Jury Charge at 1142:10-1144:14.

[69] *Davis*, Dkt. 88, Tr. of Jury Charge at 1143:18-25.

[70] *L. Sand,* Inst. 19-3 at 19-7; *Davis*, Dkt. 88, Tr. of Jury Charge at 1144:3-8.

[71] *L. Sand,* Inst. 19-6 at 19-32; *Davis*, Dkt. 88, Tr. of Jury Charge at 1144:8-14.

government must prove by evidence of each defendant's own actions and conduct, beyond a reasonable doubt, that he unlawfully, willfully, and knowingly entered into the conspiracy.[72]

The term 'knowingly' means that you must be satisfied beyond a reasonable doubt that in joining the conspiracy, if you find that a defendant did join the conspiracy, the defendant knew what he was doing.[73]  An act is done "knowingly" if it is done deliberately and purposefully; that is the defendant's act or acts must have been the product of the defendant's conscious decision rather than the product of mistake, or accident or some other innocent reason.[74]

Unlawful means contrary to law.  In order to know an illegal purpose, a defendant need not have known that he was breaking any particular law.  He needs to have been aware only of the generally unlawful nature of his actions.[75]  It is not enough for the government to prove that the defendant you are considering intended to violate NCAA rules.  As I have previously instructed you, NCAA rules are not the law.

Willfully means to act with the specific level of intent that I have already explained to you in the discussion of the substantive counts.  In other words, an act is done willfully if its done voluntarily and in intentional violation of a known legal duty.[76]

In deciding whether the defendant whom you are considering was, in fact, a member of the charged conspiracy, you should ask yourself:  did the defendant participate in the conspiracy to defraud the Universities out of money or property with knowledge of the conspiracy's

---

[72] *Blaszczak*, Dkt. 331, Tr. of Jury Charge at 3987:15-23.

[73] *Blaszczak*, Dkt. 331, Tr. of Jury Charge at 3987:24–3988:6.

[74] *Id.*

[75] *Id.* at Tr. of Jury Charge at 3988:7-11.

[76] *Id.* at Tr. of Jury Charge at 3988:12-16.

unlawful purpose and with the specific intention of furthering its objective?[77]  In that regard, it has been said that in order for a defendant to be deemed a participant in a conspiracy, he must have had a stake in the venture or its outcome.[78]  While proof of a financial interest in the outcome of a scheme is not essential, if you find that the defendant had such an interest, that is a factor that you may properly consider in determining whether or not the defendant was a member of the conspiracy to defraud the Universities.[79]

As I mentioned a moment ago, before any of the defendants can be found to have been a conspirator, you must first find that he knowingly joined in an unlawful agreement to defraud the Universities out of money or property.[80]  The key question, therefore, is whether the defendant you are considering joined the conspiracy with an awareness of at least some of the basic aims and purposes of this unlawful agreement.

It is important for you to note that the defendant's participation in the conspiracy must be established by independent evidence of his own acts or statements, as well as those of the other alleged co-conspirators, and the reasonable inferences that may be drawn from them.[81]  However, the defendant need not have known the identities of each and every other member of the conspiracy, nor need he have been apprised of all of their activities.[82]

---

[77] *L. Sand,* Inst. 19-6 at 19-32.

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.*.

I do want to caution you, however, that the mere association by any of the defendants with a conspirator does not itself make that defendant a member of the conspiracy, even if the defendant knows of the conspiracy.[83]   A person may know or be friendly with a criminal without being a criminal himself.[84]   Mere similarity of conduct, the fact they may have assembled together and discussed common aims and interests, does not necessarily establish membership in a conspiracy.[85]

I also want to caution you that mere knowledge or acquiescence without participation in the unlawful plan is not sufficient to find a defendant guilty.[86]   Moreover, the fact that the acts of a defendant, without knowledge, merely happened to further the purposes or objectives of the conspiracy does not make the defendant a member of the conspiracy.[87]   More is required under the law.   What is necessary is that the defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intent of aiding in the accomplishment of those unlawful ends.[88]

---

[83] *Blaszczak*, Dkt. 331, Tr. of Jury Charge at 3989:1-10, 3994:25-3995:3; *L. Sand,* Inst. 19-6 at 19-33; *Davis*, Dkt. 88, Tr. of Jury Charge at 1145:18-24.

[84] *Blaszczak*, Dkt. 331, Tr. of Jury Charge at 3989:1-10, 3994:25-3995:3; *L. Sand,* Inst. 19-6 at 19-33; *Davis*, Dkt. 88, Tr. of Jury Charge at 1145:25-1146:4.

[85] *L. Sand,* Inst. 19-6 at 19-33; *Davis*, Dkt. 88, Tr. of Jury Charge at 1145:25-1146:4.

[86] *L. Sand,* Inst. 19-6 at 19-33; *Davis*, Dkt. 88, Tr. of Jury Charge at 1146: 5-14.

[87] *Blaszczak*, Dkt. 331, Tr. of Jury Charge at 3989:1-10, 3994:25-3995:3; *L. Sand,* Inst. 19-6 at 19-33; *Davis*, Dkt. 88, Tr. of Jury Charge at 1146:5-14.

[88] *L. Sand,* Inst. 19-6 at 19-33; *Davis*, Dkt. 88, Tr. of Jury Charge at 1146:5-14.

INSTRUCTION NO. 4

(Adapted from *L. Sand et al.* Modern Fed. Jury Inst. – Crim., Inst. 19-5)

*Multiple Conspiracies*

In this case, the defendants contend that the government's proof fails to show the existence of a single overall conspiracy.  Whether there existed a single unlawful agreement, or many such agreements, or indeed, no agreement at all, is a question of fact for you, the jury, to determine in accordance with the instructions I am about to give you.

When two or more people join together to further one common unlawful design or purpose, a single conspiracy exists.  By way of contrast, multiple conspiracies exist when there are separate unlawful agreements to achieve distinct purposes.  Proof of several separate and independent conspiracies is not proof of the single, overall conspiracy charged in the indictment, unless one of the conspiracies proved happens to be the single conspiracy described in the indictment.

In order to prove a single conspiracy, the prosecution must show that each alleged member agreed to participate in what he knew to be a collective venture directed towards a common goal.[89]  If you find that the single conspiracy charged in the indictment did not exist, you cannot find any defendant guilty of the single conspiracy charged in the indictment.  This is so even if you find that some conspiracy other than the one charged in this indictment existed, even though the purposes of both conspiracies may have been the same and even though there may have been some overlap in membership.  Similarly, if you find that a particular defendant

---

[89] *United States v. McDermott*, 245 F.3d 133, 137(2d Cir. 2001) (defendant insider tipper could not have rationally been member of conspiracy with tippee who, unbeknownst to defendant, was simultaneously passing along defendant's insider information to another tippee, whose identity and existence was unknown to defendant).

was a member of another conspiracy, and not the one charged in the indictment, then you must acquit the defendant of the conspiracy charge.

Therefore, what you must do is determine whether the conspiracy charged in the indictment existed.  If it did, you then must determine the nature of the conspiracy and who were its members.

<u>INSTRUCTION NO. 5</u>

(Adapted from *L. Sand et al.* Modern Fed. Jury Inst. – Crim., Inst. 3-11)

*Venue*

In addition to all of the elements of the counts that I've described with respect to the alleged crimes, you must consider the issue of venue; namely, whether any act in furtherance of the unlawful activity occurred within the Southern District of New York.

The Southern District of New York includes Manhattan, the Bronx, Westchester, Rockland, Putnam, Dutchess, Orange and Sullivan Counties.  In this regard, the government need not prove that the entirety of any of the charged crimes was committed in the Southern District of New York, or that the defendant you are considering were present here.  Instead, venue is proper if you find that:

<u>First</u>, the defendant intentionally or knowingly caused an act in furtherance of the scheme to defraud the Universities to occur in the Southern District of New York; or

<u>Second</u>, it was foreseeable to the defendant that such an act would occur in the Southern District of New York.[90]

I should note that on this issue, and this issue alone, the government need not prove venue beyond a reasonable doubt, but only by a mere preponderance of the evidence.  However, the government must prove venue separately as to each of the three counts.[91]  If you find that the government has failed to prove the venue requirement with respect to a given count, then you must acquit the defendant you are considering on that count.

---

[90] *United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003).

[91] *United States v. Rutigliano*, 790 F.3d 389, 396 (2d Cir. 2015).

Dated: New York, New York
       August 22, 2018

**NEXSEN PRUET LLC**

By: /s/ William W. Willkins
William W. Wilkins
Mark C. Moore
Andrew A. Mathias
55 E. Camperdown Way, Suite 400
Greenville, South Carolina 29601
(864) 370-2211

**OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.**
Merl F. Code
300 North Main Street
Greenville, South Carolina, 29601
(864) 271-1300

*Attorneys for Defendant Merl Code*

**WILLKIE FARR & GALLAGHER LLP**

By: /s/ Michael S. Schachter
Michael S. Schachter
Casey E. Donnelly
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

*Attorneys for Defendant James Gatto*

**HANEY LAW GROUP PLLC**

By: /s/ Steven A. Haney
Steven A. Haney
3000 Town Center Drive, Suite 2570
Southfield, Michigan 48075
(248) 414-1470

*Attorneys for Defendant Christian Dawkins*