WILLKIE FARR & GALLAGHER LLP

MICHAEL S. SCHACHTER
212 728 8102
mschachter@willkie.com

787 Seventh Avenue
New York, NY 10019-6099
Tel:   212 728 8000
Fax:   212 728 8111

October 15, 2018

**BY EMAIL AND BY HAND**

The Honorable Lewis A. Kaplan
United States District Court for the
Southern District of New York
Room 1940
500 Pearl Street
New York, NY 10007

Re:   *United States v. James Gatto, et al.  (Case No. S2 17-CR-686),*
      *Defendants' Letter Regarding the Admissibility of Exhibits to Be Offered During the Cross*
      *Examination of TJ Gassnola.*

Dear Judge Kaplan:

We write on behalf of Defendants James Gatto, Merl Code, and Christian Dawkins to

inform the Court of our intention to pursue a particular line of cross-examination with Government

cooperator T.J. Gassnola and to seek an advance ruling from the Court regarding the admissibility of

exhibits that Defendants will seek to admit during Mr. Gassnola's cross examination.

During his direct examination, Mr. Gassnola testified that he gave $2,500 to Fenny

Falmagne, the legal guardian of Silvio DeSousa, a high school basketball player from Angola, so that

DeSousa could attend night/online classes.  (Trial Tr. 1012:4- 1012:19.)  Mr. Gassnola testified that he

also agreed to give Mr. Falmagne $20,000, so that Mr. Falmagne could "get out from under" a prior

arrangement with a University of Maryland booster who had given $60,000 to Mr. Falmagne with the

expectation that DeSousa would attend Maryland.  (Tr. 1012:15-1013:14, 1017:10-18; 1018:20-

1020:5; GX2T at 2:15-25.)  Mr. Gassnola testified, however, that he never gave the $20,000 to Mr.

Falmagne because of the arrests in this case, which took place on September 26, 2017.  (Tr. 1020:1-5.) The Government asked Mr. Gassnola "why" he had agreed to provide $20,000 to Mr. Falmagne and Mr. Gassnola responded, "Because I wanted to help the situation and make sure that the kid [Silvio DeSousa] stayed at Kansas."  (Trial Tr. 1013:3-10.)  However, when Mr. Gassnola was asked whether he had "ever discussed [his] plan to pay Silvio DeSousa's guardian with anyone at the University of Kansas," Mr. Gassnola responded, "No, never."  (Trial Tr. 1017:19-21.)

Mr. Gassnola did admit, however, that he had "first" been "put in touch" with Mr. Falmagne by Kurtis Townsend, the associate men's basketball coach at Kansas, but Mr. Gassnola told the jury that Mr. Townsend had not asked Mr. Gassnola or Adidas to provide cash to Mr. Falmagne, but rather only sought Adidas's assistance in arranging for "product" to be sent to the "Angola national team," a team for which DeSousa played and Mr. Falmagne was associated.  (Tr. 1013:20-1015:7.) Mr. Gassnola also informed the jury that he had a "brief, brief conversation" with Kansas's head basketball coach, Bill Self, regarding Mr. Falmagne's request for Adidas product for the Angola national team.  (*Id.*)  According to Mr. Gassnola's trial testimony, he assured the Kansas coaches that he would "take care of [Mr. Falmagne's request]" but, to the best of Mr. Gassnola's recollection, Adidas did not end up providing any "assistance" to the Angola national team.  (*Id.*)

Defendants believe that Mr. Gassnola is lying to the jury about his communications with Coach Self and Coach Townsend regarding Mr. Falmagne.  Mr. Gassnola has known Coach Self for "more than a decade" and has testified that they have a "very good relationship."  (Tr. 1078:7-1079:13.)  Defendants believe that Mr. Gassnola is not telling the truth about his communications with Coach Self and Coach Townsend because Mr. Gassnola, perhaps understandably, does not want either man to lose his job or be arrested and Mr. Gassnola does not want the NCAA to penalize Kansas for recruiting violations perpetuated by its coaching staff.  However, the jury is entitled to truthful

testimony and the documentary evidence produced in this case credibly rebuts the story Mr. Gassnola provided on direct. The Government has advised Defendants that it does not object to Defendants' pursuing this line of cross-examination with Mr. Gassnola but does object, on hearsay grounds (at a minimum) to the admission of the exhibits Defendants seek to offer during this line of cross.

The evidence Defendants seek to offer is relevant and important to the jury's assessment of the credibility of Mr. Gassnola's testimony regarding his communications with Coach Self and Coach Townsend. Defendants seek to offer this evidence pursuant to either a valid exception to the hearsay rule or for a non-hearsay purpose. Below, Defendants describe the evidence at issue and the purpose for which that evidence is being offered.

A. **Mr. Gassnola's Contemporaneous Communications Strongly Suggest that Coach Self and Coach Townsend Encouraged Mr. Gassnola to Strike a Deal with Mr. Falmagne to Secure Silvio DeSousa's Commitment to Kansas.**

On August 8, 2017, at 7:00pm, Coach Townsend sent Mr. Gassnola a text message containing contact information for Mr. Falmagne. (DX160-1.) At 10:22am the next morning, August 9, 2017, Mr. Gassnola sent a text message to Coach Self: "Hall of famer. **When you have 5 min and your alone. Call me p.**" (DX156-2 (emphasis added).) Approximately an hour later, at 11:43am, Coach Self called Mr. Gassnola's cell phone and the two spoke for five minutes and six seconds.[1] At 5:24pm that same day, Mr. Gassnola texted Coach Townsend and asked Coach Townsend to call him. (DX160-2 ("Hit me when u can").) Coach Townsend responded by text 44 minutes later, to inform Mr. Gassnola that "Coach Self just talked to fenny" and to ask Mr. Gassnola to "let [him] know how it

---

[1] Should Mr. Gassnola not recall this phone call, the parties have agreed to stipulate to the fact that a phone number associated with Bill Self placed a call to a phone number associated with Thomas Gassnola on August 9, 2017 at 12:43 p.m. Eastern Time. The duration of the call was five minutes and six seconds.

goes." (DX160-2.) Mr. Gassnola responded that he had tried to contact Mr. Falmagne but had gotten "no answer," and Coach Townsend explained why Mr. Falmagne had not answered Mr. Gassnola's call: "He was on with us," meaning with Coach Townsend and Coach Self. (*Id.*)

Three hours later, at 9:33pm, Mr. Gassnola sent a text message to Coach Self informing him that he had "talked with Fennie." (DX156.) Coach Self replied with a question: "We good?" (*Id.*) Mr. Gassnola assured Coach Self: "Always." (*Id.*) Mr. Gassnola then told Coach Self, "that[ ] was light work" and stated "[b]all is in his court now," referring to Mr. Falmagne. (*Id.*) In response, Coach Self informed Mr. Gassnola that he had "spoke[n] to Sean [Lester]," Kansas's Deputy Athletic Director. (*Id.*) Coach Self told Mr. Gassnola: "All Good." (*Id.*) Mr. Gassnola then asked Coach Self, "Will it be done by Tuesday Deadline?," which Defendants contend is a reference to the contract negotiations that were taking place at this time between Adidas and Kansas, regarding Kansas's renewal of its sponsorship agreement with Adidas. (*Id.*) Coach Self responded, "From what I was told yes" and Mr. Gassnola replied, "Great, Thank you boss."

Ten days later, on August 19, 2017, Mr. Gassnola texted Coach Self to say, "Hall of famer. Thank you for the help with Getting this extension done." (DX192.) Coach Self responded, "**I am happy with Adidas. Just got to get a couple real guys.**" (*Id.* (emphasis added).) Mr. Gassnola quickly sent a series of texts in response, including one in which he professed, "In my mind its KU bill self. Everyone else fall into line, too f*cking bad, that's what's right for adidas Basketball And I know Iam RIGHT. The more you win, have lottery pics. And you happy[.] That's how it should work in my mind." (*Id.*) Coach Self appeared to agree with Mr. Gassnola's priorities and replied: "That's how [it] works. At UNC and Duke," both of which are Nike-sponsored Universities. (*Id.*) In response, Gassnola made the following promise to Coach Self: "**I promise you. I got this, I have never let you down[.]** Except [DeAndre Ayton] lol[.] **We will get it right.**" (*Id.* (emphasis added).)

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ On

August 28, 2017, Mr. Gassnola texted Mr. Gatto and stated, "Silvio DeSousa commits to KU today."

(GX107K-10 (in evidence).)  On August 30, 2017, at 1:04pm, Mr. Gassnola said to Mr. Gatto,

regarding DeSousa's commitment to Kansas, "I know you don't give a sh*t Lol." ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Mr. Gassnola explained that he had been "running around dropping 30 grand here, 20 grand here, to

make sure Kansas re-signs at Adidas," a statement which is consistent with the texts exchanged

between Mr. Gassnola and Coach Self in August of 2017.  (*See* DX156; DX192.)  In addition, a

payment by Mr. Gassnola to Mr. Falmagne on August 30, 2018 is also consistent with the statement

Mr. Gassnola made to Mr. Gatto on September 11, 2018—which has been admitted into evidence for its truth—in which Mr. Gassnola told Mr. Gatto that he needed to "send this guy **another** 20 grand out on Wednesday because I got to get him out from under this Under Armour deal and the deal he's got with this guy who was taking care of him." (GX2-T at 2:13-25 (emphasis added).) ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### B. Mr. Gassnola's Communications with Coach Townsend Strongly Suggest that Coach Townsend Knew Mr. Falmagne Had Accepted Impermissible Benefits In Violation of the NCAA Rules.

As explained above, Mr. Gassnola testified to the jury that he did not discuss his plan to pay Mr. Falmagne in order to get Mr. Falmagne "out from under [his] Under Armour deal," *see* GX2-T at 2:16-25, with anyone at the University of Kansas, including Coach Self and Coach Townsend. (Trial Tr. 1017:19-22.) Mr. Gassnola's contemporaneous communications with Coach Townsend strongly suggest that Mr. Gassnola's testimony on this subject may not be truthful.



[REDACTED]

[REDACTED]

Mr. Gassnola's exchanges with Coach Townsend strongly suggest that Coach Townsend was aware of Mr. Gassnola's plan to pay Mr. Falmagne in order to get Mr. Falmagne "out from under [his] Under Armour deal." (*See* GX2-T at 2:16-25.) [REDACTED]

[REDACTED]

[REDACTED] At the very least, this suggests that Mr. Gassnola may have believed that Coach Townsend was asking Adidas to ensure that Mr. Falmagne was able to "get out from under" the deal he had made to send to DeSousa to Maryland.

Moreover, although Mr. Gassnola testified that any communications he had with Coach Townsend and Coach Self regarding Mr. Falmagne related to Mr. Falmange's request that Adidas "product" to be sent to the "Angola national team," there is reason to believe that is simply a cover story. (Tr. 1013:20-1015:7.) In fact, the Angola National Team had Nike uniforms in July of 2017, as official photographs of DeSousa in the Angola National team uniform demonstrate. [REDACTED]

[REDACTED] While is it *possible* that the Angola National team could have been exploring a potential switch in apparel companies, the fact that it already had Nike uniforms in the summer of 2017 is

evidence that Mr. Gassnola's story may not be truthful.  Moreover, on October 13, 2018, Defendants served a subpoena upon Adidas seeking:

- All records regarding requests for product for, product provided to, or payments made to the Angolan National Basketball Team from January 1, 2013 to the present;

- All communications sent to or received by Jim Gatto regarding the sponsorship of, proposed sponsorship of, or agreement to provide merchandise to the Angolan National Basketball Team from January 1, 2013 to the present.

Based on communications with counsel for Adidas, Defendants understand that Adidas intends to respond to Defendants' subpoena today (October 15, 2018) with a certification that it possesses no records responsive to either request.  If Mr. Gassnola was being truthful when he told the jury that he only spoke with Coach Self and Coach Townsend about Mr. Falmagne's request for Adidas product for the Angola National Team, it seems likely that this request would have made it back to someone at Adidas, especially given Mr. Gassnola's impassioned promise to Coach Self:  **"I promise you.  I got this, I have never let you down[.]... We will get it right."**  (DX192 (emphasis added)).  The fact that Adidas does not have any records that corroborate Mr. Gassnola's story is further evidence that he may be lying to the jury,

### C.  The Exhibits Defendants Seek to Offer Are Admissible.

Defendants seek to admit the following exhibits during the cross examination of Mr. Gassnola, each of which is offered for a non-hearsay purpose or pursuant to a valid hearsay exception, as described below.

- **DX156:**

1. Mr. Gassnola's statement: "Hall of Famer. When you have 5 min and your alone. Call me p" is a request that is not capable of being true or false, and as such, is not hearsay.

2. Mr. Gassnola's statement, "I talked with Fennie" is not being offered for its truth, but rather to demonstrate that Mr. Gassnola told Coach Self that he had spoken with Mr. Falmange. As such, it is being offered for a permissible non-hearsay purpose.

3. Coach Self's statement, "We good?" is a question and as such, is not hearsay.

4. Mr. Gassnola's statement, "Always. That's was light work. Ball is in his court now" is not being offered to show that anything, including Mr. Gassnola's agreement to pay $20,000, was in fact, "light work" or that the "ball was in [Mr. Falmagne's] court" but rather is being offered to demonstrate that Mr. Gassnola uttered these words to Coach Self.

5. Coach Self's statement, "Spoke to Sean. All good," is not being offered for its truth. Defendants are not offering this statement to show that Coach Self actually spoke to Sean Lester but rather are offering this statement to show that Coach Self and Mr. Gassnola linked Adidas's contract extension with Kansas to the discussions they were having regarding Mr. Falmagne, as Mr. Gassnola explained in a later recorded conversation with Mr. Code that he had "drop[ped] that f*cking bag to that f*ucking idiot, Fenny" and was "running around dropping 30 grand here, 20 grand here, to make sure Kansas re-signs at Adidas." (DX32T at 5:13-21; 8:3-6.)

6. Mr. Gassnola's statement, "Will it be done by Tuesday Deadline?" is a question and as such, is not hearsay.

7. Coach Self's statement "From what I was told yes" is not being offered for its truth, as Defendants do not seek to establish that Coach Self was told anything. Rather, this statement is being offered for its effect on the listener, Mr. Gassnola, who, Defendants contend, believed

that Coach Self persuaded Sean Lester to re-sign the Adidas contract in exchange for Adidas's assistance in recruiting Silvio DeSousa to Kansas and away from Maryland.

8. Mr. Gassnola's statement, "Great.  Thank u boss" is not a statement that is capable of being true or false and as such, does not implicate the hearsay rule.

- **DX160-1:**  This exhibit demonstrates that Coach Townsend sent Mr. Gassnola contact information for Mr. Falmagne.  A .vcf file is not capable of being true or false and as such, does not implicate the rule against hearsay.

- **DX160-2:**

1. Mr. Gassnola's statement, "Hit me when you can," is a command that is not capable of being true or false, and as such, is not hearsay.

2. Coach Townsend's statement, "Coach Self just talked to fenny" is not being offered for its truth.  Defendants are not trying to establish that Coach Self did or did not talk with Mr. Falmagne but instead offer this statement to demonstrate that Coach Townsend told Mr. Gassnola that Mr. Falmagne and Coach Self had spoken.

3. Coach Townsend's statement "let me know how it goes" is a command, and as such, is not hearsay.

4. Mr. Gassnola's statement, "I called no answer" is not being offered to show that Mr. Falmange did not answer Mr. Gassnola's call but rather is being offered to show that Mr. Gassnola told Coach Townsend that he had called Mr. Falmagne.

5. Mr. Gassnola's statement, "I'll do it again now" is a statement of a plan by Mr. Gassnola that reflects his then-existing statement of mind and so is offered pursuant to Rule of Evidence

803(3), which provides that statements of a declarant's then-existing state of mind are not excluded by the rule against hearsay.

6. Coach Townsend's statement, "He was on with us," is not being offered for its truth. Defendants do not seek to offer this statement to show that the Kansas coaches were on the phone with Mr. Falmagne but rather to show that they were communicating *about Mr. Falmagne* with Mr. Gassnola during this period.

- **DX162:**





- **DX163:**

    1. Coach Townsend's "forward" to Mr. Gassnola of a message from Mr. Falmange in which Mr. Falmagne stated, "Coach been on the phone with Angola[.] We are good to go[.] We will commit tomorrow" is not being offered to prove the truth of any of those assertions. Instead, this evidence is being offered to demonstrate that Mr. Falmagne was in contact with Coach Townsend and that Coach Townsend was keeping Mr. Gassnola apprised of his communications with Mr. Falmange.

    2. Coach Townsend's statement "From fenny" is not being offered to prove that Mr. Falmange was in fact the author of the "forwarded" text message but rather is being offered to demonstrate that Coach Townsend told Mr. Gassnola that Mr. Falmagne had made those statements.

3. Mr. Gassnola's statement, "Great. I'll follow up tomorrow" is a statement of a plan by Mr. Gassnola that reflects his then-existing statement of mind and so is offered pursuant to Rule of Evidence 803(3), which provides that statements of a declarant's then-existing state of mind are not excluded by the rule against hearsay.

4. Coach Townsend's statement, "Thank you" is not a statement that is capable of being true or false so it does not implicate the rule against hearsay. Moreover, this statement is offered for its effect on the listener, Mr. Gassnola, who would have heard Coach Townsend express gratitude in response to Mr. Gassnola's promise to "follow up" with Mr. Falmagne the next day.

- **DX192:**

1. Mr. Gassnola's statement, "Hall of famer. Thank you for the help with Getting this extension done. Thx brotha" is not being offered for its truth, but rather to demonstrate Mr. Gassnola's state of mind, namely, his belief that Coach Self was involved in Kansas's decision to renew its endorsement deal with Adidas.

2. Coach Self's statement, "I'm happy with adidas" is being offered pursuant to Rule of Evidence 803(3), which provides that statements of a declarant's then-existing state of mind are not excluded by the rule against hearsay.

5. Coach Self's statement, "Just got to get a couple of real guys" is a statement of a plan by Coach Self that reflects his then-existing statement of mind and so is offered pursuant to Rule of Evidence 803(3), which provides that statements of a declarant's then-existing state of mind are not excluded by the rule against hearsay. Alternatively, Defendants would offer this statement for its effect on the listener, Mr. Gassnola, a non-hearsay purpose.

3. Mr. Gassnola's statement that "when the time is right. I will need to call on you to back me on some things.  Have to make a few changes and keep getting better.  I am tired of fighting internal wars when it comes to the Jayhawks" is not being offered to prove the truth of any of the matters asserted.  Instead, it is being offered to demonstrate that Mr. Gassnola said these words to Coach Self.

4. Coach Self's statement, "Ok. But why would rivers fight. What did we I ever do to him[?]" is a question, and as such, is not hearsay.

5. Mr. Gassnola's statement, "nothing.  He is a great guy.  I just think ppl get intimidated by me, and are jealous of our relationship.  I will fix it TRUST me  We can't be successful with insecure ppl" is not being offered for its truth but rather to demonstrate Mr. Gassnola's belief that he and Coach Self had the kind of "relationship" that inspired "jealous[y]" in others.

6. Mr. Gassnola's statement, "In my mind its KU bill self.  Everyone else fall into line, too f*cking bad, that's what's right for adidas Basketball  And I know Iam RIGHT.  The more you win, have lottery pics. And you happy[.]  That's how it should work in my mind" is being offered pursuant to Rule of Evidence 803(3), which provides that statements of a declarant's then-existing state of mind are not excluded by the rule against hearsay.

7. Coach Self's statement, "That's how [it] works. At UNC and Duke," is not being offered for its truth, but rather to demonstrate its intended effect on the listener, Mr. Gassnola, who was, as an Adidas employee, in fierce competition with Nike-sponsored colleges like UNC and Duke to sign top basketball programs to sponsorship deals and may have understood this comment as a suggestion that he engage in conduct such as the planned payment to Mr. Falmagne that Mr. Gassnola described. (*Id.*)

8. Mr. Gassnola's statement, "Kentucky as well" is not being offered for its truth, but rather to demonstrate that Mr. Gassnola read and concurred with Coach Self's statements concerning UNC and Duke.

6. Mr. Gassnola's statement, "I promise you. I got this, I have never let you down[.] Except [DeAndre Ayton] lol[.] We will get it right" is a statement of a plan by Mr. Gassnola that reflects his then-existing statement of mind and so is offered pursuant to Rule of Evidence 803(3), which provides that statements of a declarant's then-existing state of mind are not excluded by the rule against hearsay.

- **DX199:**





- **DX224**:



- **DX225:**



Defendants respectfully seek a ruling on the admissibility of the exhibits described in this letter—DX156; DX160-1; DX160-2; DX162; DX163; DX192; DX199; DX224; DX225—which, if admitted, Defendants will use to cross examine Mr. Gassnola on his prior testimony concerning the knowledge (or lack thereof) of Coach Self and Coach Townsend regarding payments made to Mr. Falmange by Adidas in connection with DeSousa's recruitment to Kansas.

Respectfully submitted,

Michael Schachter /C.S.M.

Michael S. Schachter

On Behalf Of:
Mark C. Moore
Andrew A. Mathias
Merl F. Code
(Counsel for Defendant Merl Code)

Steven A. Haney
(Counsel for Defendant Christian Dawkins)

cc (by email):
Edward Diskant
Noah Solowiejczyk
Mark Eli
Aline Flodr
U.S. Department of Justice