UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

                              -against-                          17-cr-686 (LAK)

JAMES GATTO, aka "Jim,"
MERL CODE, and
CHRISTIAN DAWKINS

                                            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/3/19

## MEMORANDUM OPINION

Appearances:

> Edward B. Diskant
> Eli Jacob Mark
> Noah David Solowiejczyk
> Aline R. Flodr
> Assistant United States Attorneys
> AUDREY STRAUSS
> *Attorney for the United States, Acting Under*
> *Authority Conferred by 28 U.S.C. § 515*

> Michael Steven Schachter
> Casey Ellen Donnelly
> WILLKIE FARR & GALLAGHER LLP
>
> *Attorneys for Defendant James Gatto*

> Mark C. Moore
> Andrew A. Mathias
> William W. Wilkins
> NEXSEN PRUET, LLC

Merl F. Code
OGLETREE DEAKINS NASH SMOAK & STEWART, PC

*Attorneys for Defendant Merl Code*


Steven A. Haney, Sr.
HANEY LAW GROUP PLLC

*Attorney for Defendant Christian Dawkins*


Brendan R. McGuire
Ronald C. Machen
Matthew T. Jones
WILMER CUTLER PICKERING HALE & DORR LLP

*Attorneys for Proposed Intervenor National Collegiate Athletic Association*


Jonathan M. Albano
Victoria Peng
MORGAN, LEWIS & BOCKIUS, LLP

*Attorneys for Proposed Intervenor Oath, Inc.*


LEWIS A. KAPLAN, *District Judge.*

This matter involves motions to intervene for the purpose of seeking records related to this criminal case submitted by the National Collegiate Athletic Association ("NCAA") and Oath, Inc. ("Oath"). For the reasons explained below, the motions are denied.


*Background*

I.      *Relevant Factual History*

In October 2018, following a jury trial, the defendants were convicted of conspiracy

to commit, and the commission of, wire fraud relating to a corruption scheme involving NCAA Division I college basketball.  In March 2019, the Court sentenced defendant James Gatto to a 9-month term of imprisonment and defendants Merl Code and Christian Dawkins each to a 6-month term of imprisonment.  Shortly before sentencing, the NCAA submitted a motion to intervene for the purpose of obtaining materials related to the criminal case.  Specifically, the NCAA seeks access to twenty-four exhibits marked for potential introduction at trial and the unredacted sentencing memorandum of James Gatto, along with its associated exhibits.  The government opposes the NCAA motion on two grounds.  First, it argues that the NCAA does not have a proper basis to intervene because it is a private entity seeking access to further its own regulatory function rather than to vindicate any public's right of access to the materials.  Second, it argues that even if the NCAA did  have a proper basis to intervene, it still would not be entitled to access the specific records at issue.

In June 2019, Oath submitted a similar motion to intervene, seeking access to twenty of the twenty-four proposed exhibits sought by the NCAA, and also to James Gatto's unredacted sentencing memorandum and accompanying exhibits.  Oath operates a number of online properties including Yahoo Sports – a sports news website that provides news coverage of collegiate and professional sports.  The government does not contest Oath's basis to intervene, given that it is a news organization seeking to vindicate the public's claimed right of access to the documents in question.[1]  The government, however, continues to oppose disclosure of the particular records

---

[1]

> Although the "Federal Rules of Criminal Procedure make no reference to a motion to intervene in a criminal case[,] . . . such motions are common [] to assert the public's First Amendment right of access to criminal proceedings." *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008); *See also United States v. Graham*, 257 F.3d 143, 145-146 (2d Cir. 2001) (recognizing the right of the media to intervene to obtain audio and video tapes that the

4

sought.

*Discussion*

I.     *Common Law Right of Access*

"The Supreme Court has recognized a qualified right 'to inspect and copy judicial records and documents.'"[2] This "common law right of access to judicial documents is firmly rooted in our nation's history."[3] But "[w]hile the existence of the common law right to inspect and copy judicial records is beyond dispute . . . it is equally clear that that right is not absolute."[4] "[T]he decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case."[5]

"Before any such common law right can attach . . . a court must first conclude that the documents at issue are indeed 'judicial documents.'"[6] "Once the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches,

---

government intended to present at a pretrial hearing).

[2]     *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978)).

[3]     *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).

[4]     *Graham*, 257 F.3d at 149 (internal citations and quotations omitted).

[5]     *Nixon*, 435 U.S. at 599.

[6]     *Lugosch*, 435 F.3d at 119.

it must determine the weight of that presumption."[7]  Last in the analysis, "the court must 'balance competing considerations against it.'"[8]

A.      Existence of Judicial Documents

The first issue is whether the requested documents constitute "judicial documents" to which the presumption of access applies.  The documents requested by the proposed intervenors fall into the following categories:  materials (1) offered into evidence but excluded by the Court at trial, (2) used to refresh a witness's recollection, or (3) discussed on the record but never moved into evidence.  These documents consist of transcripts of wiretapped calls, text messages, emails and correspondence, financial records, and a document memorializing a witness's prior statements to the FBI.[9]  None of the documents were admitted into evidence at trial.

The government argues that "none of the requested records, which consist principally of unadmitted exhibits and documents used to refresh a witness's recollection, constitute 'judicial records' for which the presumptive right of access attaches."[10]

---

[7]     *Id.*

[8]     *Id.* at 120 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("*Amodeo II*").

[9]     Gov't Brief at 1.

[10]    July 22 letter at 1.

The government does not address specifically whether James Gatto's sentencing memorandum and its accompanying exhibits are judicial records.  The NCAA states that "the [g]overnment does not contest that James Gatto's sentencing memorandum constitutes a judicial record."  NCAA Reply at 5, fn. 7.  For the reasons stated in the NCAA and Oath motions, the Court considers the sentencing memorandum and accompanying exhibits to be

"[T]he definition of a 'judicial document' [] extend[s] to any material presented in a public session of court 'relevant to the performance of the judicial function and useful in the judicial process' whether or not it was formally admitted."[11]  However, the Second Circuit has emphasized that "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access."[12]

In *United States v. Graham*,[13] the Second Circuit considered whether tapes played at a pre-trial hearing, but not formally received in evidence, were judicial documents subject to the common law right.  The Court determined that the tapes were judicial documents, regardless of whether they were formally received in evidence, because they "were instrumental in [the Court's] decision to detain the defendants," which "constituted a determination of the defendant's 'substantive rights.'"[14]

More recently, the Second Circuit explained:

"a court performs the judicial function not only when it rules on motions currently before it, but also when properly exercising its inherent supervisory powers.  A document is thus relevant to the performance of the judicial function if it would

---

judicial records. *See United States v. Kravetz*, 706 F.3d 47, 56 (1st Cir. 2013) ("Although we previously have not decided the precise question of whether advocacy memoranda, commonly submitted by the parties to the court in advance of sentencing, are 'judicial records' entitled to a common law presumption of access, we have little doubt that they are.").

[11]

*Graham*, 257 F.3d at 153 (2d Cir. 2001) (quoting *United States v. Amodeo*, 44 F.3d 141, 146 (2d Cir. 1995) ("*Amodeo I*").

[12]

*Brown*, 929 F.3d at 49 (quoting *Amodeo I*, 44 F.3d at 145).

[13]

257 F.3d 143.

[14]

*Id.* at 153.

reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision."[15]

Of particular relevance to certain documents sought in this case, the Circuit went on to state that

> "motions to compel testimony, to quash trial subpoenae, and to exclude certain deposition testimony . . . call upon the court to exercise its Article III powers. Moreover, erroneous judicial decision-making with respect to such evidentiary and discovery matters can cause substantial harm. Such materials are therefore of value to those monitoring the federal courts. Thus, all documents submitted in connection with, and relevant to, such judicial decision-making are subject to at least some presumption of public access."[16]

However, in explaining that documents submitted to a court for its consideration in a summary judgment motion constitute judicial documents as a matter of law, the Circuit stated that this conclusion "relies on the general principle that parties may be assumed to have supported their papers with admissible evidence and non-frivolous arguments. Insofar as a district court has, through striking a filing, specifically found that assumption inapplicable, the categorical rule . . . may not apply."[17]

Of course, this Court excluded the proposed exhibits at trial precisely because it determined that they were inadmissible. If inadmissible evidence does not necessarily qualify as a judicial document when filed with a motion for summary judgment, it is reasonable to conclude that the same result might apply when sought to be introduced at trial. However, the *Brown* panel

---

[15]

    *Brown*, 929 F.3d at 49 (emphasis in original) (internal citations and quotations omitted).

[16]

    *Id.* at 50 (internal citation and quotation omitted).

[17]

    *Id.* at fn. 12 (internal citation omitted).

stated also that decisions respecting the "court's authority to oversee discovery and control the evidence introduced at trial" itself are exercises of judicial power.[18]  And while the exercise of that authority might be "ancillary to the court's core role in adjudicating a case,"[19] filings submitted in connection with such determinations are judicial documents nonetheless.

The government argues that "there is some reason to doubt [that the proposed exhibits] even constitute 'judicial documents'" because "[t]he Second Circuit has repeatedly restricted that term to those materials *filed* with the Court."[20]  Indeed, the relevant language from *Brown v. Maxwell* involved the "presumption of public access *in filings* submitted in connection with discovery disputes or motions *in limine.*"[21]  While the relevant case law often has addressed materials *filed* with the Court, we do not consider this to be a necessary condition to qualify as a judicial document.  Rather, a document still can be a "judicial document" if its contents affected a party's substantive legal rights, even if it was never formally filed with the Court.[22]

For the purposes of these motions, we assume, without deciding, that exhibits offered into evidence to which this Court made a substantive determination regarding their admissibility are

---

18

   *Id.* at 50.

19

   *Id.*

20

   Brief at 9.

21

   *Brown*, 929 F.3d at 49 (emphasis added).

22

   *See Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 169 (2d Cir. 2013) (Lohier, J., concurring) (emphasis added) ("Keeping that description in mind makes it relatively easy for me to conclude that the Report is a judicial document: *although it was never filed*, its contents were central to the District Court's determination of Schmitt's 'substantive legal rights' in the contempt proceeding.").

judicial documents to which the presumptive right of access applies.[23]

The same assumption, however, is not afforded to documents merely shown to witnesses or otherwise discussed in Court but not offered into evidence. We agree with the government that these documents were neither relevant to the performance of the judicial function nor useful in the judicial process.[24] The Court never was asked to take any action with respect to these documents. Nor were they relied upon by the Court in the performance of its duties or in the exercise of its supervisory powers. Oath acknowledges as much in stating that these documents "were not relied upon by the court in making a judicial ruling on sentencing or on the admissibility of evidence."[25]

The Second Circuit's decision in *Newsday LLC v. County of Nassau*[26] provides a useful comparison. In that case, the Circuit considered whether a report used to refresh a witness's recollection during testimony in a contempt proceeding was a judicial document. The *Newsday* panel concluded that it was not, noting that only the witness's testimony, and "not the material used to

---

[23]

Irrespective of whether the documents sought to be admitted into evidence at trial qualify as judicial documents to which a presumptive right of access applies, for the reasons explained below, disclosure would still be inappropriate in these particular circumstances.

[24]

See *Graham*, 257 F.3d at 153 ("Because we find that the question whether the tapes at issue are judicial documents within the meaning of the common law privilege . . . does not turn on whether they were formally admitted as evidence, we must return to the more general question whether they are relevant to the performance of the judicial function and useful in the judicial process.")

[25]

Oath Brief at 14.

[26]

730 F.3d 156 (2d Cir. 2013).

refresh his recollection, could be relied on by the court in deciding the contempt application."[27]

Likewise in this case, only the witness's testimony, and not the documents used to refresh the

witnesses's recollection, could be relied on or were in any way relevant in determining the

substantive rights of the defendants on trial. These materials, therefore are "not the type[s] of judicial

documents to which the [] right attaches."[28]

### B.     *The Weight of the Presumption*

With respect to the exhibits offered in evidence at trial, we now "must determine the

weight of th[e] presumption" of access attaching to them.[29]

> "[T]he weight to be given the presumption of access must be governed by the role of
> the material at issue in the exercise of Article III judicial power and the resultant
> value of such information to those monitoring the federal courts.  Generally, the
> information will fall somewhere on a continuum from matters that directly affect an
> adjudication to matters that come within a court's purview solely to insure their
> irrelevance."[30]

The presumption has been given great weight "where the requested documents had been introduced

at trial . . . or had otherwise been material to a court's disposition of a case on the merits."[31] That

strong presumption "largely derived from the role those documents played in determining litigants'

---

[27]    *Id.* at 167.

[28]    *Id.*

[29]    *Lugosch*, 435 F.3d at 119.

[30]    *Amodeo II*, 71 F.3d at 1049.

[31]    *Graham*, 257 F.3d at 151.

substantive rights—conduct at the heart of Article III—and from the need for public monitoring of that conduct."[32]   The presumption is weakest with respect to documents "such as preliminary settlement documents, which have not yet been submitted to a court for ratification," because they "play a negligible role in the trial judge's exercise of Article III judicial power."[33]

The proposed intervenors argue that the decision whether to admit documents into evidence constitutes an adjudication as to the defendant's substantive legal rights, and that therefore, the documents enjoy a strong presumption of access.  They argue that defendants "explicitly asked the Court to wield its Article III powers and permit them to show the exhibits to the jury" and that the documents, therefore were "presented to the court to invoke its powers or affect its decisions."[34]

The government takes a narrower view with respect to what constitutes a determination of a litigant's substantive legal rights.  It claims that many of the exhibits were excluded due to their "lack of probative value to any issue properly before the jury."[35]  Therefore,

---

[32]      *Id.* (internal quotation omitted).

[33]      *Id.* (internal citations and quotations omitted).

[34]      NCAA Reply at 6-7 (quoting *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 142 (2d Cir. 2016).

     The NCAA acknowledges that "not every document to which it seeks access stands on equal footing" and that "[e]xhibits put directly before the Court for an admissibility decision . . . enjoy a stronger presumption of access than the exhibits used to refresh a witness's recollection [] or other exhibits that were only discussed on the public record."  NCAA Reply at 7, fn. 8.  Having concluded that only the documents put directly before the Court for an admissibility decision qualify as judicial records entitled to any presumption of public access, we do not consider the weight of the presumption with respect to the other documents.

[35]      Gov't Brief at 11.

according to the government, the documents "came within [the] court's purview solely to insure their irrelevance" and consequently fall on the weakest end of the presumption of access continuum.[36] At the core of the disagreement is the government's contention that the proposed intervenors "appear[] to conflate judicial determination of whether to admit a particular record with judicial determination of a party's claim on the merits."[37]

In *United States v. Graham*, the Second Circuit explained that "[t]he detention of criminal defendants pending trial is a quintessential exercise of a court's Article III judicial power, and the public has a legitimate interest in monitoring a court's use of that power."[38] It therefore determined that tapes which formed "the primary basis for the district court's decision to detain the defendants pending trial" were entitled to a strong presumption of access.[39] Relying on a comment in *Graham* that the presumption of access to documents submitted on an unsuccessful motion for summary judgment "is appreciably weaker,"[40] the government asks that we apply this weaker presumption also to evidence that was submitted to the Court for admission but ultimately not received.[41] The Second Circuit recently clarified that "it is well-settled that documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial

---

[36]     Gov't Brief at 11 (quoting *Amodeo II*, 71 F.3d at 1049).

[37]     *Id.* at 12.

[38]     257 F.3d at 154.

[39]     *Id.*

[40]     *Id.* at 151.

[41]     Gov't Brief at 12.

13

documents to which a strong presumption of access attaches."[42]  This strong presumption applies

whether or not the motion is granted, as the Court has "expressly rejected the proposition that

different types of documents might receive different weights of presumption based on the extent to

which they were relied upon in resolving a motion for summary judgment."[43]

In *Brown v. Maxwell*, when considering the weight of the presumption of access over

filings "related to, *inter alia*, motions to compel testimony, to quash trial subpoena, and to exclude

certain deposition testimony," the Circuit stated that:

> "Although a court's authority to oversee discovery and control the evidence
> introduced at trial surely constitutes an exercise of judicial power, we note that this
> authority is ancillary to the court's core role in adjudicating a case.  Accordingly, the
> presumption of public access in filings submitted in connection with discovery
> disputes or motions *in limine* is generally somewhat lower than the presumption
> applied to material introduced at trial, or in connection with dispositive motions such
> as motions for dismissal or summary judgment.  Thus, while a court must still
> articulate specific and substantial reasons for sealing such material, the reasons
> usually need not be as compelling as those required to seal summary judgment
> filings."[44]

As previously stated, the documents sought to be introduced into evidence, but not

admitted by the Court, implicated an exercise of judicial power.  We therefore assume for purposes

of these motions that these documents are "subject to at least some presumption of access."  As the

Court's exercise of authority with respect to these materials is, however, "ancillary to the court's role

in adjudicating a case," the weight of the presumption of access to these materials is diminished.

---

[42]
       *Brown*, 929 F.3d at 48 (internal quotation omitted).

[43]
       *Id.* (internal quotation omitted).

[44]
       *Id.* at 50 (internal citation omitted).

14

C.    *Countervailing Factors*

"Once the weight of the presumption is determined, a court must balance competing considerations against it."[45]   Countervailing factors include: "(i) the danger of impairing law enforcement or judicial efficiency and (ii) the privacy interests of those resisting disclosure."[46]

[Paragraph redacted and filed in sealed unredacted version of this opinion.]

With regard to all other materials, the government argues that"[t]here is a strong privacy interest of third-parties that would be adversely impacted by release of the materials the NCAA seeks or the unsealing of the limited redactions in Gatto's sentencing submission."[47]  The proposed intervenors argue that this singular countervailing interest is insufficient to outweigh the presumption of access to these documents.

"[T]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation."[48]  Such interests "are a venerable common law exception to the presumption of access."[49]  Furthermore, "courts have the power to insure that their records are not 'used to gratify private spite or promote public scandal,' and have 'refused to permit their files to serve as reservoirs of libelous statements for press consumption.'"[50]

---

[45]     *Amodeo II*, 71 F.3d at 1050.

[46]     *Id.*

[47]     Gov't Brief at 14.

[48]     *Amodeo II*, 71 F.3d at 1050 (internal quotation omitted).

[49]     *Id.* at 1051 (internal quotation omitted).

[50]     *Id.* (quoting *Nixon*, 435 U.S. at 598.

The government claims that the privacy interests of third-parties "weigh in favor of maintaining the materials under seal because: (i) the records sought are quintessentially private documents that include some of the most intimate forms of communication; (ii) the release of the records could result in potential harm or injury to third parties not involved in the instant criminal case or ancillary litigation; and (iii) the reliability of the information in the requested materials, which includes hearsay, speculation and rumor, also weighs against unsealing."[51] We address each of these arguments in further detail.

i.   Subject Matter of the Documents

"In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public."[52] In this regard, the Second Circuit has explained that "[f]inancial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public."[53]

The government argues that the materials are "quintessentially private documents, and include some of the most intimate forms of communication, including phone calls (obtained pursuant to Title III wiretaps), text messages (obtained by grand jury subpoenas and search warrants), and

---

[51]   July 22 Letter at 2.

[52]   *Amodeo II*, 71 F.3d at 1051.

[53]   *Id.*

emails (obtained through the same types of processes)."[54]

The proposed intervenors claim that any privacy interests the third-parties have in many of these documents is diminished because their contents—including the names of the third-parties and their purported activities—were discussed elsewhere on the public record, and portions have already been widely disseminated in the media.[55]

ii.  Nature and Degree of the Injury

After considering the subject matter of the documents, "[t]he nature and degree of the injury must also be weighed."[56] "This will entail consideration not only of the sensitivity of the information and the subject but also of how the person seeking access intends to use the information."[57] For example, [c]ommercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts, and personal vendettas similarly need not be aided."[58]

The government argues that the NCAA seeks these materials for the purpose of investigating potential rule violations and taking enforcement action if warranted, which is "at core a commercial or private interest," and therefore subservient to the privacy interests of the third-

---

[54] Gov't Brief at 14.

[55] NCAA Reply at 8-9; Oath Brief at 11, fn. 4.

[56] *Amodeo II*, 71 F.3d at 1051.

[57] *Id.*

[58] *Id.*

parties. We do not consider the NCAA's actions to be, as the government suggests, akin to commercial competitors seeking advantage over rivals or using the courts in the aid of personal vendettas. But we acknowledge the potential harm that could befall third-parties as a result of the professed actions of the NCAA in requesting these documents. In any event, and irrespective of the NCAA's motives, the government concedes that Oath seeks the documents to vindicate the public's right of access to these materials.

    iii.    <u>Reliability of the information</u>

In balancing the privacy interests of third parties,

> "The court should consider [also] the reliability of the information. Raw, unverified information should not be as readily disclosed as matters that are verified. Similarly, a court may consider whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein."[59]

In *Amodeo II*, the Court drew a distinction between unsealing different parts of a report that, on the one hand, contained unsworn accusations of "doubtful veracity" which "would circulate accusations that cannot be tested by the interested public," and on the other, material that contained "little unverifiable hearsay and no material that might be described as scandalous, unfounded, or speculative."[60] The government claims that "the reliability of the requested materials, which includes hearsay and rumor, as well as the possibility of prompt action without the possibility for third parties to respond also weighs in favor of unsealing."[61] The proposed intervenors claims that "this position

---

[59]

    *Id.*

[60]

    *Amodeo II,* 71 F.3d at 1052.

[61]

    Gov't Brief at 15.

underestimates the public's ability to dispassionately monitor the functioning of the court system, and, indeed, undermines the very reason why the public is permitted to intervene in the first place."[62]

iv.    Analysis

At bottom, the requested materials all share the common feature of implicating individuals other than the defendants in potential NCAA rule violations.   The third-parties themselves are parties to some of the communications reflected in the documents.   Most involve references to the conduct of other individuals not party to the communications.   For example, DX 25T and DX 28T reflect transcribed communications of wiretapped calls between one of the defendants and a third party, which references the conduct of others.   Exhibits DX 101, DX 102, DX 162, DX 199, DX 219 and DX 223 reflect text messages, many of which are between third parties and reference other individuals not involved in those discussions.   Exhibits DX 1011, DX 1301, DX 1302 and DX 1313 are emails between or among one of the defendants and other individuals, which reference also third parties not involved in the discussions.   DX 1958 is a letter written on university letterhead, purporting to copy two other individuals in its distribution.   Unlike the other materials in question, this document appears to have been written and transmitted for an official university purpose, and does not involve private methods of communication.   But in all cases, the third-parties referenced in these documents could be harmed by disclosure of the additional information not already reported in the media.

As previously mentioned, the materials relate to potential rule violations of third-

---

[62]    NCAA Reply at 10.

parties not on trial in this action, which might be regarded by certain segments of the public as scandalous conduct.   Disclosure carries the risk of significant reputational and professional repercussions for those referenced in the documents. That some information relating to the documents in question already has been discussed on the public record or reported in the media does not mean that the third-parties concerned have lost any remaining privacy interests in their contents.[63] We agree with the government that the information in these documents consists of hearsay, speculation and rumor.  Furthermore, the individuals referred to in these documents are not standing trial.  They will not have the opportunity to test the reliability of the information contained in these materials nor respond adequately to any inferences that might be drawn on the basis of this information.   In other words, the documents are of a sensitive nature, and the degree of potential injury is high.

The Court has reviewed also the redactions in the Gatto sentencing memorandum and its accompanying exhibits.  These redactions likewise pertain to alleged NCAA rule violations on the part of individuals other than the defendants on trial.[64]  For the reasons stated above, the third-parties referred to in these documents have a strong privacy interest in this information.  Additionally, the presumption of access to the redacted information contained in the sentencing

---

[63]

See, e.g., Matter of New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987) ("much of the Title III material contained in the papers has already been publicized.  Nonetheless, limited redaction of the Title III material in the papers may still be appropriate.").

[64]

Some of the redactions in certain exhibits to the sentencing memorandum appear to be routine and non-controversial, such as the redactions of certain signatures (where the identity of the signor is disclosed), DI 282-48 at ECF 8, or the identities of all of the students on a University of Kansas squad list showing, inter alia, the amount of financial aide that each of them received, DI 282-47 at ECF 1-2.  We assume that this is not the type of information that the proposed intervenors seek to access through their motions.

memorandum is minimal because it was utterly immaterial to the sentence that the Court imposed. In response to the "everyone else was doing it" line of argument, the Court noted:

> "I don't buy the argument that that means I should impose a lenient sentence to avoid unwarranted disparities, because when the sentencing guidelines and the statute talk about unwarranted disparities, they're talking about disparities in sentences, not disparities that result because somebody else didn't get caught and you did, which is what we're mostly dealing with here."[65]

Just as documents reflecting potential rule violations of other individuals not on trial were irrelevant to the criminal trial, these arguments were immaterial in determining the sentence that the defendants received. This information therefore played a negligible if any role in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts is minimal. As such, the privacy interests of the third-parties outweighs the public's right of access to these materials.

In sum, the Court has considered the privacy interests of the third-parties referenced in the documents sought for admission into evidence at trial and in the redacted portions of James Gatto's sentencing memorandum in relation to the weight of presumption of public access, and concludes that disclosure is unwarranted.

## II.    *First Amendment Right of Access*

"In addition to the common law right of access, it is well established that the public and the press have a 'qualified First Amendment right to attend judicial proceedings and to access

---

[65]    Sentencing Transcript [DI 299] at 33-34.

certain judicial documents.'"[66] The Second Circuit has articulated two different approaches in deciding whether the First Amendment right applies to particular material. "The 'experience-and-logic' approach applies to both judicial proceedings and documents, and asks 'both whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question.'"[67] "The second approach—which we adopt only when analyzing judicial documents related to judicial proceedings covered by the First Amendment right—asks whether the documents at issue 'are derived from or are a necessary corollary of the capacity to attend the relevant proceedings.'"[68]

"A court's conclusion that a qualified First Amendment right of access to certain judicial documents exists does not end the inquiry."[69] Rather, "[d]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest."[70] "Broad and general findings by the trial court, however, are not sufficient to justify closure."[71]

---

[66] *Lugosch*, 435 F.3d at 120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004).

[67] *Newsday*, 730 F.3d at 164 (quoting *Lugosch*, 435 F.3d at 120).

[68] *Id.*

[69] *Lugosch*, 435 F.3d at 120.

[70] *In re New York Times Co.*, 828 F.2d at 116 (internal quotation marks omitted).

[71] *Id.*

To begin, access to these documents does not derive from, nor are they a necessary corollary of, the capacity to attend the trial. As the government points out, these documents were not shown to those who attended the proceeding. The trial transcript conveys all relevant information that those in attendance knew of the information they contained. Second, the proposed intervenors provide no authority for the proposition that any of the proposed exhibits are of the type that historically have been open to the press. Nor does public access to documents ruled inadmissable play a positive role in the functioning of the criminal trial.

Finally, while *Brown v. Maxwell* supports the proposition that documents sought to be admitted into evidence are entitled to some diminished degree of the common law presumption of access, the *Brown* Court did not so find with respect to the qualified First Amendment right of access. It noted specifically that documents submitted to a court for its consideration in a summary judgment motion are judicial documents "to which a strong presumption of access attaches, under both the common law and the First Amendment."[72] But in considering the other sealed materials, which like the documents in question in this case pertain to "a court's authority to oversee discovery and control the evidence introduced at trial," the Court analyzed only whether the common law presumption of access attached to those materials. Therefore, we conclude that these are not the type of documents to which the qualified First Amendment right of access applies.[73]

---

[72]  929 F.3d at 47.

[73]  For reasons previously stated, the redacted information from James Gatto's sentencing memorandum is not subject to the First Amendment right of access because it did not play a significant positive role in the functioning of the defendants' sentencing proceedings. However, even assuming, *arguendo,* that the First Amendment right of access applied to this information, closure of the limited redactions therein is essential to preserve the higher value of protecting the privacy rights of third-parties and is narrowly tailored to serve that interest, for the reasons discussed above.

*Conclusion*

For the foregoing reasons, the motions of the NCAA and Oath to intervene for the

purpose of obtaining the requested materials are denied.[74]

SO ORDERED.

Dated:        September 3, 2019

Lewis A. Kaplan
United States District Judge

---

[74] Because the government concedes that Oath is a proper party to assert the public's right of access and, in any event, we hold that disclosure of these materials would be inappropriate, we have no reason to address the arguments relating to whether the NCAA has a proper basis to intervene in this action.